FARMERS' & MERCHANTS' BANK OF CATLETTSBURG, KY., v. COMMISSIONER OF INTERNAL REVENUE.

No. 5973.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1932.

George B. Martin, of Catlettsburg, Ky., (Chester A. Bennett, of Washington, D. C., on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Wm. Cutler Thompson, C. M.

Charest, T. M. Mather, and J. M. Morawski, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Petitioner, a corporation, was engaged in the banking business at Catlettsburg, Ky., and within the district of the Federal Reserve Bank of Cleveland, Ohio. It was the custom of petitioner to make a charge for the collection of checks on foreign banks and of checks drawn on it and sent from other banks. Petitioner was not a member of the Federal Reserve System so that checks drawn on it instead of being cleared through the Reserve Bank were sent direct to petitioner by the holding bank and paid by drafts on Cincinnati or New York.

In 1920 the Reserve Bank demanded that petitioner should clear checks at par. This demand was refused, and thereupon the Reserve Bank notified its members that it would collect without charge all checks sent to it and drawn on petitioner. Its method was to employ agents who would appear daily at the bank with these checks and demand payment thereof in cash. This practice was followed about eighteen months. For a greater portion of the time these collections were effected in such an unusual and unbusinesslike manner as to attract unfavorable public comment, and petitioner claimed that it was thereby annoyed, embarrassed, and interfered with in the conduct of its affairs. Subsequently petitioner brought an action against the Reserve Bank for damages alleged to have been sustained by reason of these tactics. In its petition it set out particularly that, by reason of the wrongful conduct of the Reserve Bank, it had been forced to procure and keep in its vaults and with its correspondents unusually large amounts of money; that it had lost the earning power of a great deal of money; that it had lost deposits and depositors, and had failed to gain new ones; that it had been unable to grow, and to develop new business; and that it had been permanently injured in its reputation, standing, growth, and prosperity. The petition also included a claim for exemplary damages based upon a charge that the conduct of the Reserve Bank was malicious.

This action was compromised in 1925 and the Reserve Bank paid $18,750.00 in full settlement. The expense of the suit being deducted the net amount received by petitioner was reduced to $13,792.96. Respondent conceived that this fund represented earnings for the year 1925 and included it in petitioner's net income for that year. The Board of Tax Appeals sustained the respondent. It decided that at least some portion thereof represented earnings and that petitioner had failed to show what portion did not.

We cannot assent.

The fund involved must be considered in the light of the claim from which it was realized and which is reflected in the petition filed in its action against the Reserve Bank. We find nothing therein to indicate, with the certainty required in the statement of a cause of action, that petitioner sought reparation for profits which petitioner's misconduct prevented it from earning in 1925. Charles E. Rous, petitioner's cashier, testified before the Board that the loss of such earnings could not be definitely determined and this probably furnishes the explanation for the failure definitely to demand it. Petitioner not only did not insist upon the restoration of anticipated profits as a matter of fact, but based its claim for damages upon an alleged tortious injury to the good will of its business, and we can see no legal distinction between compensation for destruction of or damage to incorporeal or intangible property, such as good will, and similar compensation for damage to tangible property. Compare Harris & Co. v. Lucas (C. C. A.) 48 F.(2d) 187, syl. 5.

We think that the gravamen of petitioner's action against the Reserve Bank was the injury inflicted to its banking business generally, and that the true measure of damages was compensation to be determined by ascertaining how much less valuable its business was by reason of the wrongful acts of the Reserve Bank. See Yates v. Whyel Coke Co., 221 F. 603, 607 (C. C. A. 6); Central Coal & Coke Co. v. Hartman, 111 F. 96, 99 (C. C. A. 8). Injury to its business of course means injury to its financial standing, credit, reputation, good will, capital, and other possible elements. Profits were one of the chief indications of the worth of the business; but the usual earnings before the injury, as compared with those afterward, were only an evidential factor in determining actual loss and not an independent basis for recovery. We think that, if petitioner's case had proceeded to a verdict, the law would not have awarded to it what it might have expected to gain but only that which it had actually lost. We are not justified in reading an element into the compromise which was not therein distinctly recognized in fact and would not have

been recognized in law. We think therefore that there is no logical basis upon which petitioner could be charged with gain. See Strother v. Com'r, 55 F.(2d) 626, 633 (C. C. A. 4). One may be recompensed for an injury but it is a rare case in which one should have a profit out of it.

The order of the Board of Tax Appeals is reversed.