**CENTRAL R. CO. OF NEW JERSEY v. COMMISSIONER OF INTERNAL REVENUE.**

No. 5531.

Circuit Court of Appeals, Third Circuit.

Sept. 24, 1935.

Alexander H. Elder and Richard J. Lally, both of New York City, for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Arnold Raum, Sp. Assts. to the Atty. Gen., for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

The question in this case is whether or not the value of certain property received by the taxpayer, the Central Railroad Company of New Jersey, in settlement of a suit in equity is income to the taxpayer in the year in which it was received.

For a number of years, prior to 1921, Henry L. Joyce was the executive officer of the taxpayer in charge of its New York Marine Department. He was intrusted with considerable responsibility and authority.

While he was an official in the employ of the taxpayer, Joyce and Harry B. James caused the organization of the Railroad Stevedoring Corporation, the Boat Repairing Corporation, and the Victory Steamship Company. Through these corporations, Joyce surreptitiously carried on business operations which were adverse to the interests of the taxpayer. The Interstate Commerce Commission revealed that these corporations, without disclosing Joyce's connection with them, had been enabled on account of his position to make advantageous leases and contracts with the taxpayer for his benefit.

The taxpayer brought a suit in equity against Joyce and the Victory Steamship Company on the theory that he, James, and the corporation had conspired to defraud the taxpayer. The taxpayer sought an accounting of the profits earned by the corporations or to recover damages sustained by the taxpayer in entering into contracts and agreements with the corporations organized and controlled by Joyce.

In June, 1928, the suit was settled and the taxpayer received property admittedly worth $456,405. The property consisted of certain structures, equipment, machinery, and appurtenances which were

698

located on the water-front property leased by the Boat Repairing Corporation from the taxpayer for a term of ten years from 1919. The lease provided that the Boat Repairing Corporation might remove this property at any time prior to the termination of the lease, but this provision was nullified by the settlement.

The taxpayer did not include this property in its income tax return for 1928, the taxable year in question, but the Commissioner of Internal Revenue determined that the amount of the property received in the settlement should have been included in the gross income of the taxpayer for that year. The Board of Tax Appeals approved the determination of the commissioner.

The question of what constitutes income is defined in the statute and it is not always in accord with strict accounting practices, as has often been recognized by the Congress and courts. Section 22 (a) of the Revenue Act of 1928 (26 USCA § 22 and note) is the statute applicable here and it provides: "General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

It is true as the taxpayer says that not all property received as the result of litigation is income. Alimony and separation allowances are not considered income. That is because a wife is entitled to be supported by her husband and the alimony which she receives is in the nature of the portion of his estate to which she is equitably entitled and of which she has been deprived. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211. Damages recovered because of personal injuries or illness are exempt. Section 22 (b), Revenue Act of 1928 (26 USCA § 22 and note); regulation 22, article 82. Likewise, damages recovered for alienation of affections, breach of promise to marry, and libel and slander are generally not taxable. Those actions

are of a personal nature and do not fall within the statutory definition of income. The thought is that a recovery in such actions is compensatory. The damages are in payment of injuries sustained. C. A. Hawkins v. Commissioner, 6 B. T. A. 1023; Mrs. Lyde McDonald v. Commissioner, 9 B. T. A. 1340.

It is equally true that every receipt of money is not taxable. But this case is not analogous to the so-called "contribution" cases on which the taxpayer relies.

In Edwards v. Cuba Railroad Co., 268 U. S. 628, 45 S. Ct. 614, 69 L. Ed. 1124, it was held that subsidies paid by a government to a railroad and conditioned on the completion of certain construction did not constitute taxable income. The Edwards Case and others of that sort are based on the fact that the subsidies represent an increment to capital. Tampa Electric Co. v. Commissioner, 12 B. T. A. 1002; Midland Valley Railroad Co. v. Commissioner, 19 B. T. A. 423.

In Farmers' & Merchants' Bank v. Commissioner, 59 F.(2d) 912, 913 (C. C. A. 6), the court held that money received in settlement of a suit by a bank for damages done to the good will of its business was not taxable. The court said in its opinion: "The fund involved must be considered in the light of the claim from which it was realized and which is reflected in the petition filed in its action against the Reserve Bank. We find nothing therein to indicate, with the certainty required in the statement of a cause of action, that petitioner sought reparation for profits which petitioner's misconduct prevented it from earning in 1925."

That suit was not to recover the loss of profits, but to recompense the bank for the injury to its business.

But the case of the Farmers' & Merchants' Bank recognizes the principle that damages recovered for the loss of profits are taxable just as profits made in the regular course of business.

As the court said in Farmers' & Merchants' Bank v. Commissioner, supra, the value of the property involved here must be considered in the light of the claim from which it was realized.

We are concerned here with the taxability of the value of property which was obtained by the taxpayer in settle-

ment of the suit against Joyce and his dummy corporation. Whether or not the property was money, personal or real property, is a matter of form. The question is whether or not it represented income to the taxpayer.

The taxpayer contends that whatever property it received as a result of the settlement was not derived from its capital and labor, or either, and is therefore not income. It argues that its right to recovery in the equity suit was based on the doctrine of Jackson v. Smith, 254 U. S. 586, 41 S. Ct. 200, 201, 65 L. Ed. 418, wherein a trustee of an estate made an agreement with two other persons that one of them should purchase the property for themselves and the trustee. The Supreme Court said therein: "The course taken was one which a fiduciary could not legally pursue. Magruder v. Drury, 235 U. S. 106, 119, 120, 35 S. Ct. 77, 59 L. Ed. 151. Since he did pursue it and profits resulted the law made him accountable to the trust estate for all the profits obtained by him and those who were associated with him in the matter, although the estate may not have been injured thereby. Magruder v. Drury, 235 U. S. 106, 35 S. Ct. 77, 59 L. Ed. 151. And others who knowingly join a fiduciary in such an enterprise likewise become jointly and severally liable with him for such profits."

In its brief, the taxpayer defined the nature of the property in question as follows: "What was sought was not a profit or gain derived from the use or operation of petitioner's property or capital by Joyce or any of the corporations. It was not a payment for services rendered, or duties to be performed, or consideration received. It was not a gift or the payment of a debt. What was received by the taxpayer was in the nature of a windfall. It was something which Joyce for public reasons was not permitted to keep and to which the petitioner, not on its own account but in the public interest, became entitled."

■ It may be that the language of the statutory definition of income contained in section 22 (a) is broad enough to include the value of the property which the taxpayer obtained by its settlement of the suit in equity. It would be difficult to bring the item within the specific references in the statutory definition, but it is made comprehensive by including "gains or profits and income derived from any source whatever." But what is not income cannot be so made by definition. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570; Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897; Morris-Poston Coal Co. v. Commissioner, 42 F.(2d) 620 (C. C. A. 6).

■ The Supreme Court defined "income" in Eisner v. Macomber, supra, as being "'the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." This definition has ever since been restated and applied consistently without modification. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362; Helvering v. Independent Life Insurance Co., 292 U. S. 371, 54 S. Ct. 758, 78 L. Ed. 1311.

■ It is apparent then that income must come from capital or labor, or both, including gains from the sale of assets. That being so, the value of the property which the taxpayer received cannot be traced to either capital or labor. As the taxpayer said in the paragraph quoted above, what it received was in the nature of a "windfall." It was a penalty imposed by the law on a faithless fiduciary, a gain granted gratuitously because of the necessity of keeping persons in positions of trust beyond the temptation of double dealing. It cannot be said that it was derived wholly or in part from the use of the taxpayer's capital or labor. The nearest that one can come to that is to say that Joyce and his dummies could not have operated but for Joyce's position with the taxpayer and its type of business. But Joyce's ultra vires operations were not carried on by the use of the taxpayer's capital and labor. They were entirely separate and apart from its business structure.

Moreover, the settlement was not based on a suit by the taxpayer to recover profits of which it had been deprived.

■ The taxpayer also contends that it is entitled to a rehearing for the reason that the board failed to hear arguments on two claims of the taxpayer for refunds in the taxable year of 1928 involving matters other than the question determined above.

But there is no merit to the contention that the taxpayer is entitled to have this

case remanded to the board in order that the two claims may be heard. When the board entered its decision on the principal question involved here, the commissioner had not acted on these claims. That was on September 11, 1933. At that time the taxpayer's counsel was not even aware of the existence of the claims. On November 11, 1933, the taxpayer filed a motion for rehearing in order to introduce evidence on the claims. The board denied the motion. Its action was entirely proper. The taxpayer made no attempt to show any facts other than that its counsel was unaware of the existence of the claims. That certainly does not support its contention that the board abused its discretion in denying the rehearing.

The order of the Board of Tax Appeals denying the motion for a rehearing is affirmed, and the order determining the value of the property received in settlement of the suit in equity is reversed.