**LYETH v. HOEY, Collector of Internal Revenue.**

District Court, S. D. New York.
July 22, 1937.

Carter, Ledyard & Milburn, of New York City (J. M. Richardson Lyeth and Allin H. Pierce, both of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (George B. Schoonmaker, of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion for summary judgment. The action is to recover an alleged overpayment of income taxes for the year 1933 amounting, with interest, to $65,005.68. There is no dispute in the essential facts. The questions presented are (1) whether the property forming the basis of the assessment was properly treated as taxable income, and (2) whether the affirmative defenses in the answer have any substance.

The plaintiff is a grandson of Mary B. Longyear, who died March 14, 1931, a resident of Massachusetts, leaving as her heirs four surviving children, and the plaintiff and his brother, sons of a deceased daughter. The estate was initially inventoried at more than $3,000,000. By her will, the decedent bequeathed to the plaintiff and his brother each a portrait, a rug, and $5,000; and to the four surviving children certain rugs, portraits, and other personalty; and to two of the four children sums of $10,000 and $5,000, respectively. The entire residuary estate was bequeathed to trustees of a so-called endowment trust, under which the income was payable to another set of trustees under another trust instrument referred to as Longyear Foundation. The main

purpose of this latter trust was to preserve the records of the earthly life of Mary Baker Eddy, the founder of the Christian Science religion.

The probate of the will was objected to by all of the heirs upon various grounds, including lack of testamentary capacity and undue influence; and the probate court, after a full hearing, directed that issues be framed for submission to a jury.

In this situation a settlement was arrived at, and a compromise agreement, dated April 26, 1932, entered into and signed by the legatees, devisees, executors under the will, the heirs, and the Attorney General of Massachusetts. This agreement provided in substance that the specific and pecuniary bequests to individuals should be enforced, that the specific bequests to charities and the bequest of the residuary estate to charitable institutions should be disregarded, and that the net residue of the estate should be divided, one-half to the charities and one-half to the heirs.

The compromise agreement was approved by the probate court, pursuant to the provisions of the Massachusetts statute, and a decree entered on April 26, 1932, admitting the will to probate, issuing letters testamentary to the named executors, and directing them "to administer the estate of said deceased in accordance with the terms of said will and said agreement of compromise."

The depression was then at its height, and the executors had difficulty in finding the necessary funds to discharge the pecuniary legacies, which, under the terms of the compromise agreement, were entitled to priority in payment before there could be any distribution of the residue. The heirs thereupon undertook to finance one-half of the pecuniary legacies, and the residuary legatees the other half. For their part of this financing, the heirs formed a corporation known as Longyear Heirs, Inc., to which they assigned their respective interests in the estate in exchange for common stock. Preferred stock in the corporation was issued to the pecuniary legatees.

On July 26, 1933, the executors turned over to Longyear Heirs, Inc., as assignee of the plaintiff, the entire distributable share of the plaintiff in the residuary estate consisting of $80.17 in cash, and 358 units representing a corresponding number of shares of various corporation owned by the decedent prior to her death. The com-

missioner valued this distributable share of the plaintiff at $141,484.03, and treated the whole amount as income for the year in which it was received. The plaintiff was accordingly assessed an additional tax of $56,389.65, which he paid on October 16, 1936, together with interest of $8,616.03.

The plaintiff was an heir of Mrs. Longyear, and would have been entitled to share in her estate if she had died intestate. In contesting the will, he was thus seeking to enforce rights which had come to him by inheritance from the decedent. His chances of success were good. This was fairly well indicated when the probate court granted the motion to frame jury issues. Smith v. Patterson, 286 Mass. 356, 190 N.E. 536. If the heirs had gone to trial, and obtained a decree denying probate, none of the property which the heirs received would have been classed as income. Yet, now, after the consummation of a settlement, under which the heirs receive only half of the residuary estate, the government chooses to treat this half as all income.

■ The contention of the government is based on the proposition that the plaintiff and the other heirs took by purchase and not under the will. That, undoubtedly, is the law of Massachusetts. Brandeis v. Atkins, 204 Mass. 471, 90 N.E. 861, 26 L. R.A.(N.S.) 230; Baxter v. Treasurer & Receiver General, 209 Mass. 459, 95 N.E. 854; Ellis v. Hunt, 228 Mass. 39, 116 N. E. 956. It is also the law of New York. Matter of Cook's Estate, 187 N.Y. 253, 79 N.E. 991. But it is only a legal fiction. And it is not controlling in the determination of the character of property for income tax purposes. Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305; Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897; Tyler v. U. S., 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L. Ed. 365; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330 81 L.Ed. 465; Untermyer v. Commissioner (C.C.A.) 59 F.(2d) 1004. That is a question for the federal court to decide for itself irrespective of local law; it depends on the inherent nature of the claim compromised, not on artificial local rules as to the effect of the compromise agreement. Central R. Co. of N. J. v. Commissioner (C.C.A.) 79 F.(2d) 697, 101 A.L.R. 1448; Farmers' & Merchants' Bank v. Commissioner (C.C.A.) 59 F.(2d) 912; Strother v. Commissioner (C.C.A.) 55 F. (2d) 626.

The definition of income in Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570, is as follows: " 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case [Doyle v. Mitchell Bros. Co.] 247 U.S. [179], 183, 185, 38 S.Ct. 467, 469 (62 L.Ed. 1054)."

■ The property received by the plaintiff is not within this definition. It was not a gain derived from capital. The plaintiff was not investing his capital but trying to obtain it. There was no gain, either, from labor. The will contest was not entered into for profit. Neither was the legal expense deductible as a loss. Merriman v. Commissioner (C.C.A.) 55 F.(2d) 879. No more was it productive of income. I do not think, therefore, that the property received was in any sense income.

The government relies heavily on the case of Bernard O. Kearney, 31 B.T.A. 935, decided by one member of the Board of Tax Appeals. In that case, the testator left two-thirds of his residuary estate to charitable organizations, and the agreement of settlement provided for the payment by these organizations of $700,000 directly to the heirs, including the taxpayer. The board member thought that the taxpayer realized a gain because he had rights which "cost him nothing," and these rights were given up "in exchange for $23,333.34." The fallacy in the argument is that no rights were given up which resulted in gain. The property which the petitioner sought to recover was something which he believed he was entitled to by inheritance. When the litigation was settled, he only received part of what otherwise would have come to him if the will had been overthrown. I think this should have been held to be capital and not income.

■ It is unnecessary to decide whether the property received by the plaintiff is within the exemption provision of section 22(b) (3) of the Revenue Act of 1932 (26 U.S.C.A. § 22(b) (3) and note); it may still be nontaxable although not covered by any specific exemption. In Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211, it was held that alimony was not income

even though not expressly exempted. The same was true in Edwards v. Cuba R. Co., 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124, where it was held that money subsidies granted by the Cuban government to an American railroad company to promote rail construction did not constitute income. Central R. Co. of N. J. v. Commissioner (C.C.A.) 79 F.(2d) 697, 699, 101 A.L.R. 1448, is similar. In that case, an officer of the taxpayer railroad organized a number of corporations through which he surreptitiously did business with the taxpayer. He was thus able to make large secret profits. The railroad sued, and a settlement was thereafter effected, by which the railroad received a considerable amount of money and property. It was held that this recovery "was in the nature of a windfall," and not income.

The two affirmative defenses remain for consideration. The first of these is stated to be "by way of set-off and recoupment," and alleges as follows: "That if the said property received by the plaintiff and other heirs under the said compromise agreement was not a proper deduction from the gross estate for purposes of the estate tax, the amount that was due and owing from the plaintiff to the United States as transferee and distributee on October 16, 1936, exceeded $65,005.68".

The second defense is "by way of estoppel," and alleges that the plaintiff is estopped from recovering because the executors of the Longyear estate claimed and secured a deduction of the entire residuary estate in the federal estate tax proceedings on the ground that the property passed under the will to charitable organizations.

The federal estate tax return was filed on November 22, 1932. In it the executors claimed as a deduction the value of the residuary bequest in the will as originally written, on the ground that the property went to a charitable organization. The bureau disputed this claim, but, after considerable discussion with the executors, the general counsel of the bureau ruled "that the deduction should be allowed in the full amount of the devise and bequest." On

July 24, 1933, the Acting Deputy Commissioner advised the executors that a final audit disclosed that there was no deficiency. This determination has never been changed, and is in full force today.

The three-year limitation period for the assessment of federal estate taxes against the executors expired November 22, 1935. Section 310(a), Revenue Act of 1926, 26 U.S.C.A. § 474(a). The additional one-year period for assessment against a transferee expired on November 22, 1936. Section 316(b) (1), Revenue Act of 1926 (26 U.S.C.A. § 500(b) (1). When the present action was started, therefore, the statute of limitations had run, not only against the executors, but against the plaintiff as transferee.

I do not think the case is one for the application of the doctrine of equitable recoupment. There certainly is no basis for a set-off or counterclaim. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, decided by the Supreme Court May 24, 1937. I do not find, either, any equitable reasons for denying recovery. The estate tax against the Longyear estate has long since been settled and paid, and the statute has run against any reopening of the proceedings. The decision of the bureau was arrived at deliberately after a full showing of the facts and a careful consideration of the law. There is nothing whatever to support any claim of estoppel, such as found in Stearns Co. of Boston, Mass., v. U. S., 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647. And even to this day the government has not indicated that it considers the ruling by the bureau on the claimed deduction unsound. Neither has there been any assessment against the plaintiff as a transferee. This is a prerequisite to the enforcement of such a claim. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. I do not think, therefore, that either of the alleged affirmative defenses is legally sufficient.

It follows that the motion of the plaintiff for summary judgment should be granted.