## STERLING v. COMMISSIONER OF INTERNAL REVENUE.
### No. 35.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Edward Holloway and Walter L. Post, both of New York City, for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This is an appeal by Elizabeth H. Sterling from a decision of the Board of Tax Appeals determining a deficiency in income taxes for the year 1930 amounting to $5,552.71. In that year the taxpayer and her sister-in-law Elizabeth W. Heydenreich had each executed warranty deeds of premises 90–92 Beekman street, New York City. She had received $46,156.25 as her share of the proceeds of sale, which the Commissioner determined to have been a gain assessable against her as income.

Emile Heydenreich, the father of the taxpayer, died in 1911, owning premises 90–92 Beekman street, New York. He was survived by a son, Louis V. Heydenreich, a daughter, Elizabeth H. Sterling, the taxpayer herein, and his widow, Annabel Heydenreich. He left a will which was admitted to probate by the surrogate of Kings county, N. Y., in which, after bequeathing his personal property to his wife, son and daughter he disposed of his real estate as follows:

"Fourth:—I give, devise and bequeath unto my Executors, hereinafter named, and to the survivors or survivor of them, or the one or more of them who may qualify and act, all my real estate, subject however to the mortgage now thereon, upon trust however during the lifetime of my two sisters, Louise E. Zabriskie and Julia Heydenreich, to collect the income therefrom and pay over to said Julia Heydenreich the sum of Sixty dollars per month, during her lifetime, out of said income, and to pay over to said Louise E. Zabriskie the sum of Fifty dollars per month during her lifetime out of said income, and after said payments aforesaid to pay over the balance of said income to my son Louis V. Heydenreich, and upon the death of my two sisters, I give, devise, and bequeath all my real estate, to my said son Louis V. Heydenreich, subject to the mortgage now thereon."

Louise E. Zabriskie and Julia Heydenreich, the sisters of the testator, both survived him. His son, Louis V. Heydenreich, died September 11, 1919, while Julia Heydenreich, one of the sisters, still remained living. Louis V. Heydenreich left surviving him his wife, Elizabeth W. Heydenreich, and by his will made the following bequest which covered any interest he might have in 90–92 Beekman street:

"Second: I give, devise and bequeath unto my beloved wife Elizabeth W. Heydenreich, all the remainder of my estate, both real and personal."

Louis V. Heydenreich in his lifetime claimed title in fee to the above real estate under the will of his father, his ownership being subject only to the payments of the annuities mentioned. After the death of Louis V. Heydenreich, his widow, Elizabeth W. Heydenreich, collected the rents, paid the taxes, and in all other respects managed and controlled the real property as absolute owner thereof. On July 31, 1930, both annuitants having theretofore died, Elizabeth W. Heydenreich entered into a contract for the sale of the real property. The New York Title & Mortgage Company, acting for the purchaser, upon searching the title, raised the question as to whether Louis V. Heydenreich took a contingent or vested remainder in the real property. It doubted whether the interest of Louis V. Heydenreich in the premises was not divested by his death prior to the termination of the trust for the payment of annuities to the testator's sisters, in which event the property would not belong to Elizabeth W. Heydenreich as devisee of Louis, but to taxpayer and Elizabeth W. Heydenreich in equal shares. To obviate objections to the title Annabel Heydenreich, the widow of Emile Heydenreich, the original owner of the premises, executed a bargain and sale deed to the purchaser, relinquishing all claims that she might have upon any of the proceeds arising from the sale, and Elizabeth W. Heydenreich and Elizabeth H. Sterling each executed and delivered to the purchaser a warranty deed. Title was passed October 30, 1930, and the proceeds were held in escrow to await the determination as between Elizabeth W. Heydenreich and the taxpayer as to ownership thereof. It was eventually agreed that the parties did not desire the trouble or expense of an action to construe the will of Emile Heydenreich. By an amicable arrangement the net proceeds were divided between Eliza-

beth W. Heydenreich and the taxpayer so that the latter received therefrom $46,156.25, and Elizabeth W. Heydenreich the remainder. The contract price was $212,500.

In the taxpayer's income tax return for the year 1933 she treated the transaction as a sale of real estate by her and reported the sum of $14,906.25 as her proportionate share of the gain derived from the sale. The Commissioner of Internal Revenue ruled that the entire sum of $46,156.25 received by her was taxable because it was paid to her as a consideration for signing the deed to the premises, and the Board of Tax Appeals appear to have affirmed the assessment and redetermined the tax at the amount fixed by the Commissioner upon the same theory. In our opinion the whole amount received by the taxpayer represented a taxable gain which was properly held taxable under the Revenue Act of 1928 (45 Stat. 791).

The taxpayer received no interest of value in premises 90–92 Beekman street under the will of her father, Emile Heydenreich. He had devised a remainder therein to her brother, Louis V. Heydenreich, and that interest was plainly a vested remainder both at common law and under the New York statute governing the devolution of future estates. New York Real Property Law (Consol.Laws, c. 50) § 40; Connelly v. O'Brien, 166 N.Y. 406, 60 N.E. 20; Van Axte v. Fisher, 117 N.Y. 401, 22 N.E. 943. Under the New York Real Property Law, § 59, it was devisable and accordingly passed by the will of Louis V. Heydenreich to Elizabeth W. Heydenreich, the latter's widow, who, after the termination of the trust to pay annuities, contracted to sell the premises. It is evident from the foregoing that, in contemplation of law, the taxpayer never had any legal interest in the premises. But, because of the unfounded requirement of the title company, she did sell a right to assert an interest in the property and ultimately received $46,156.25 therefor out of the proceeds of sale which had been placed in escrow and were distributed through a compromise between the parties in interest. The difference between the value of the taxpayer's right on March 1, 1913, and the $46,156.25 which was paid to her in 1930 was a gain equivalent to the whole amount received that year. We say this not only because on March 1, 1913, her claim apparently had no value because at that time she had no interest in the premises either vested or contingent, but, even if it might

be regarded as having some speculative worth, the value was not shown and the taxpayer had the burden of proving that it was more than nominal and that the decision of the Commissioner was wrong.

The taxpayer evidently thought that the sale of whatever interest she had in the premises involved some taxable gain for she reported $14,906.25 as a profit derived from the transaction in her 1930 income tax return. That amount, however, was erroneous on any possible theory. Her claim to an interest in the premises would seem to have been a capital asset, the sale of which for a sum greater than it was worth on March 31, 1913, involved a taxable gain.

The taxpayer relies on Farmers' & Merchants' Bank v. Commissioner, 59 F.2d 912 (C.C.A.6), and Central R. Co. v. Commissioner, 79 F.2d 697, 101 A.L.R. 1448 (C.C.A.3), to show that there could have been no taxable income. The situation in Farmers' & Merchants' Bank v. Commissioner (C.C.A.) 59 F.2d 912, was quite different from that in the present case. There a sum paid to a bank to settle an action brought by it for injury to its business and good will was held to be a capital asset rather than reparation for profits which the bank might have earned but for the tort and consequently not to be taxable income. In Central R. Co. v. Commissioner (C.C.A.) 79 F.2d 697, 101 A.L.R. 1448, a payment to a principal by its fiduciary in settlement of a claim to profits realized by the latter in business operations adverse to the principal was held to be a penalty and not income. With all deference, it would seem to us that an agent who has had to disgorge profits realized through taking away business or trading on the reputation of his principal became a fiduciary de son tort to the extent of such income and that the same was taxable against the principal. But in any event, the decision in Central R. Co. v. Commissioner, supra, is not in point here because it involved only the question whether the sums realized through impressing a trust upon the earnings of a faithless fiduciary could properly be treated as income of the cestui.

There having been no showing that the taxpayer's claim to an interest in 90–92 Beekman street was of any value, the entire amount she received for it was properly assessed against her as gain and was taxable as income.

Order affirmed.