SWASTIKA OIL & GAS CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8698.

Circuit Court of Appeals, Sixth Circuit.

Nov. 6, 1941.

Harry C. Kinne, of Chicago, Ill. (Kinne, Scovel, Robson & Murphy and Harry C. Kinne, all of Chicago, and Michael J. Sporrer, of Milwaukee, Wis., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

## SIMONS, Circuit Judge.

The respondent determined a deficiency in the petitioner's income tax return for 1935. It was based upon the receipt by the petitioner of a sum in compromise settlement of litigation pursued by the petitioner in the courts of Michigan. Two questions arise. The first is whether the payment was income or the restoration of a capital loss. The second is whether the payment was income in the tax year when it was received, or, the taxpayer making returns upon the accrual basis, the payment was income in the year when the claim arose.

The petitioner, having title to oil lands in Muskegon, Michigan, entered into a contract on April 19, 1929, with one J. D. Wrather, for the building of a refinery thereon, to cost $75,000. By its terms the petitioner was to sell Wrather all the crude oil produced by its wells with an agreement that whenever the cost of the refinery should be paid out of the profits of its operation the petitioner was to receive a 35% interest therein, and if a corporation was organized to take it over, it was to receive 35% of its stock. Wrather built the refinery and transferred it to a corporation styled the Michigan Central Refining Company. The petitioner furnished it with oil until May 28, 1930, when Wrather and his fellow stockholders caused the Michigan Central assets to be transferred to the Roosevelt Oil Company, the refinery to be moved from Muskegon, Michigan, to Mt. Pleasant, Michigan, and the Michigan Central Refining Company to be dissolved. Later, Wrather and associates caused the Roosevelt Oil Company to enter into contracts for the sale and distribution of its products to other corporations which they controlled, resulting in large secret profits to them and their nominees.

At the time of the removal of the refinery from Muskegon, $39,000 of its original cost had been paid out of the profits of the Michigan Central Refining Company earned in 1929 and 1930. The remaining $36,000 was paid out of the profits of the Roosevelt Oil Company in the period 1930 to 1933. On May 19, 1931, the petitioner filed a bill of complaint in the Circuit Court of Muskegon County, Michigan, seeking to impress a trust upon the capital stock of the Roosevelt Oil Company to the extent that it was entitled to have received stock in the Michigan Central Refining Company. In the alternative it sought to set aside the dissolution of the Michigan Central, to procure the transfer to it of all of the Roosevelt Oil Company assets, and the execution and delivery to the petitioner of its agreed share of Michigan Central capital stock. It also sought an accounting on behalf of Michigan Central, of the secret profits made by the promoters in the transactions between Roosevelt Oil Company and other corporations. A decree followed on January 23, 1935, substantially granting the petitioner's claim to relief. The dissolution of the Michigan Central Refining Company and the sale of its assets were held null and void, and the plaintiff adjudged entitled to shares of Michigan Central stock and to an accounting of the profits of that company and the Roosevelt Oil Company.

The defendants in the state court litigation prepared to take an appeal to the Michigan Supreme Court, but later agreed upon a settlement pursuant to which the petitioner, in September, 1935, received a cash payment of $80,000 in full settlement of its claims. The respondent allowed a deduction of the legal and other expenses incurred in the prosecution of the suit, and asserted a deficiency in the petitioner's taxable income for 1935 of $53,146.52. This deficiency was contested before the Board of Tax Appeals and it is the order of the Board sustaining the Commissioner that is here sought to be reviewed and set aside.

We have no difficulty in determining that the amount received by the petitioner in settlement of its suit, after the deduction of its legal and other ex-

penses was income. Whether it was received in 1935 or if it had been paid in earlier years, it was a gain derived from sales or dealings in property or growing out of the ownership or use of such property as defined in § 22 of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, page 669, then applicable. Had the stock been delivered as agreed, or had the petitioner then received its equivalent in money or other property, according to the terms of its contract it would have derived income. The applicable test was stated by us in Farmers' & Merchants' Bank v. Com'r, 6 Cir., 59 F.2d 912, 913, as follows: "The fund involved must be considered in the light of the claim from which it was realized." Undoubtedly there are cases where compensation for loss of or injury to capital may be measured by lost profits, as in the case just cited. But where the basis of the compromised claim is not an injury to capital but default in the payment of money or delivery of property which would clearly have been gain in the first instance, the settlement cannot be said to be in restoration of capital. United States v. Safety Car Heating Co., 297 U.S. 88, 98, 56 S.Ct. 353, 80 L.Ed. 500. This distinction has been observed in numerous cases. Arcadia Refining Co. v. Com'r, 5 Cir., 118 F.2d 1010; H. Liebes & Co. v. Com'r, 9 Cir., 90 F.2d 932; Hort v. Com'r, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. It is idle to contend that the compromise settlement was a restoration of capital because it represented an amount of capital stock to which the petitioner was entitled, for capital stock may bear the character of income as may other property.

The petitioner kept its books, as indicated, on an accrual basis. At the time of the removal of the refinery to Mt. Pleasant in 1930, but $39,000 of the original cost of $75,000 had been paid out of the profits of the Michigan Central Refining Company. Clearly, the petitioner was not then entitled to the delivery of any stock by Wrather or the corporation. However, the remaining $36,000 of cost was paid out of the profits of the Roosevelt Oil Company, made during the period 1930 to 1933. It is, therefore, contended that the petitioner became entitled to 35% of the capital stock of the Michigan Central, or to a like interest in the capital stock of the Roosevelt Oil Company, in 1933, and that this interest being represented by the avails of the settlement, the fund became, by virtue of the accrual method of accounting, income for 1933 and was not income for 1935 when it was received.

Perhaps too much emphasis should not be laid upon the fact that the petitioner did not return any income for 1933 as accrued by virtue of the earnings of the refinery, since it had assumed, presumptively in good faith, that its right to receive stock was not income at all. But in 1931, when the petitioner filed its suit, the question and extent of the petitioner's recovery under the terms of its agreement was uncertain. In 1933, it was both uncertain and in contest. The defendants in the state court suit had alleged that the petitioner had breached its contract by failing to provide crude oil, and had denied that sufficient profits had been realized to pay for the cost of the refinery. Until the date of the chancery court's decree, the petitioner had no unconditioned and unqualified right to receive stock or its equivalent. United States v. Safety Car Heating Co., supra, 297 U.S. 93, 56 S.Ct. 353, 80 L.Ed. 500; North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197; Board v. Com'r, 6 Cir., 51 F.2d 73, 75; Com'r v. Alamitos Land Co., 9 Cir., 112 F.2d 648, 650; H. Liebes & Co. v. Com'r, supra, 90 F.2d at page 938. In the last-cited case the court undertook an exhaustive discussion as to whether income may be said to accrue when the right to receive it arises, without giving consideration to the prospect of realization, and came to the conclusion that no income accrues unless there is a reasonable expectancy that the right will be converted into money or its equivalent. It cannot, upon this record, be said that such reasonable expectancy existed in 1933. The avails of the compromise settlement became income of the petitioner in 1935 when received.

The order of the Board of Tax Appeals is affirmed.