*Decision will be entered under Rule 50.*

WILLIAM T. PIPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4977. Promulgated November 27, 1945.

*John W. Cross, Esq.,* and *Earl C. Walck, Esq.,* for the petitioner.
*William H. Best, Jr., Esq.,* for the respondent.

1108

OPINION.

ARUNDELL, *Judge*: The petitioner exchanged his investment in the old company for shares of common stock and common stock subscription warrants in the new company. The exchange was one in which no gain or loss was recognized. No allocation of value was made between the stock and the subscription warrants at the time they were issued to petitioner. Petitioner subsequently sold the warrants in 1940, at 50 cents each, or for a total consideration of $28,500. The respondent takes the view that the warrants had neither fair market value nor actual value at the date of issuance, November 13, 1937, and, consequently, that they had a basis of zero for the purpose of determining gain or loss on the sale or exchange thereof by petitioner. From that position it follows that the petitioner would be taxable upon the sale receipts at the applicable capital gains rate, and that his total investment would be represented by the shares of common stock which he has not disposed of.

The petitioner contends that the warrants had value at the time they were acquired and, while conceding that his allocation of some $37,000 to them was nothing more than his best guess, he argues that such amount is as appropriate as any other amount that could be determined from the facts and circumstances. In the alternative he contends that, if no allocation can be made with reasonable certainty, recognition of gain or loss should be deferred until he has recovered his cost.

The Internal Revenue Code does not provide a method for allocating the cost, or other basis for determining gain or loss, to each class of securities acquired as a unit. However, the rule has become established that, where a mixed aggregate of assets is acquired in one transaction, the total purchase price shall be fairly apportioned between each class so as to determine profit or loss on subsequent sale of specific assets in the group. If such apportionment be impractical, no profit shall be realized until the cost shall have been recovered out of the proceeds of sales. See *Philip D. C. Ball*, 27 B. T. A. 388, 394; affd., 69 Fed. (2d) 439, without discussion of this point; Mertens, Law of Federal Income Taxation, vol. 3, p. 378. In *H. A. Green*, 33 B. T. A. 824, 828, we observed that respondent's regulations had for a number of years provided for such apportionment of cost and for deferment of recognition of gain until cost was recovered where allocation is impractical. It was pointed out that article 1567 of Regulations 62 [1] (interpreting the Revenue Act of 1921) had provided that allocation of cost should be made in proportion to the fair market value of each class of securities at the date of receipt, and that while subsequent regulations do not contain the exact language, the quoted provision lays down a principle equally applicable under subsequent revenue acts. Indeed, under the revenue acts and the Sixteenth Amendment only so much of the proceeds of a sale of property as represents a realized profit over and above the cost of the property sold is taxable as income.

The parties do not question the application of the rule to the instant case, and each of them has set forth the footnoted excerpt from Regulations 103, section 19.22 (a)-8,[2] as being applicable. In addition, the respondent has set forth the further provision of that section, dealing

[1] ART. 1567. * * * the proportion of the original cost, or other basis, to be allocated to each class of new securities is that proportion which the market value of the particular class bears to the market value of all securities received on the date of the exchange. * * *

[2] SEC. 19.22(a)-8. *Sale of stock and rights.*—* * * If common stock is received as a bonus with the purchase of preferred stock or bonds, the total purchase price shall be fairly apportioned between such common stock and the securities purchased for the purpose of determining the portion of the cost attributable to each class of stock or securities, but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock or securities will be realized until out of the proceeds of sales shall have been recovered the total cost.

with the sale of rights to subscribe, which is set out in the margin.[3] It appears that the rule is given the same effect under both provisions. The latter provision seems to be specifically concerned with the sale of stock rights which are distributed by a corporation to its stockholders but which do not give rise to income under section 115 (f). The warrants in question were not distributed to petitioner in respect of any stock then held by him in the corporation, but came to him through an exchange by which he acquired the stock and the warrants as a mixed aggregate of assets.

We think the respondent erred in attributing the entire cost to the shares of common stock. It can not be said that the warrants had no value simply because they could not be exercised to immediate financial advantage at the time they were issued. The right to subscribe at fixed prices over the prescribed period is the very consideration bargained for by a purchaser, and the fact that they were highly speculative and entirely prospective is no basis, in the circumstances here present, for denying to them any value. *Collin* v. *Commissioner*, 32 Fed. (2d) 753; *Commissioner* v. *Swenson*, 56 Fed. (2d) 544.

Moreover, the petitioner received 80,000 shares of common stock, plus the right to subscribe to 57,000 additional shares at any time during the 4-year period. The result of the transaction was such that petitioner was assured of control of the company, at least during that period and thereafter if he chose to exercise his options under the warrants. There was a question of the future management of the company, as it would affect earnings and dividends. This right of management and control, which was vested in the common stock, was itself valuable, and must have entered into the consideration of the purchaser. *Collin* v. *Commissioner, supra.* The petitioner testified that he would not have entered into the plan unless it had been possible for him to retain voting control.

The warrants occupied a status different from that of a stock interest. They were not reflected in the capital account of the corporation and did not represent an absolute equitable ownership therein. As emphasized above, their value sprang from the right or privilege of exercising them during a definite period of time and at specific prices

---

[3] Although the issuance by a corporation to its shareholders of rights to subscribe to its stock may not under section 115(f) give rise to taxable income, gain may be derived or loss sustained by the shareholder from the sale of such rights. In the case of stock in respect of which were acquired stock subscription rights which did not constitute income to the shareholders within the meaning of the Sixteenth Amendment to the Constitution, and in the case of such rights, the following rules are to be applied:

(1) If the shareholder does not exercise, but sells, his rights to subscribe, the cost or other basis, properly adjusted, of the stock in respect of which the rights are acquired shall be apportioned between the rights and the stock in proportion to the respective values thereof at the time the rights are issued, and the basis for determining gain or loss from the sale of a right on one hand or a share of stock on the other will be the quotient of the cost or other basis, properly adjusted, assigned to the rights or the stock, divided, as the case may be, by the number of rights acquired or by the number of shares held.

to acquire a stock interest. About the only way the fair market value could be measured would be from trading experience with respect to them, that is, sales or bid and asked prices, or from the amount of savings which might have been immediately realizable from their exercise. Evidence given by the only two witnesses was that the warrants had value, but that any value which could have been placed on them at that time would have been entirely speculative. The circumstances here are such that there is no way in which we can ascertain the fair market value of the warrants for purposes of allocating the cost between them and the common stock. Unlike the situation in *Philip D. C. Ball, supra,* the petitioner herein has produced the available and admissible evidence, substantially all of which has been stipulated by the parties.

Does it follow that the respondent must prevail if the petitioner is unable, in view of the circumstances, to establish the fair market value of the warrants at the time of their receipt? We think not. It is clearly established that they were valuable when received and that consideration was paid for them. Moreover, during the period in which they were to run they were quoted from 3/4 to 3½, and the fact remains that petitioner was able to dispose of his for some $28,000. To deny the petitioner the benefit of the rule in this case would be an injustice, for under that very rule recognition of gain or loss is postponed if there be no practical basis upon which an allocation can be made. Surely, when it is shown that the warrants had value, even though the measurement thereof be impossible, a determination of no value by the respondent is arbitrary and should be laid aside. See *Helvering* v. *Taylor,* 293 U. S. 507, and *Miles* v. *Safe Deposit & Trust Co.,* 259 U. S. 247.

In *Edwin D. Axton,* 32 B. T. A. 613, we pointed out that although one of the stocks in question undoubtedly had some value, a consideration of all of the evidence indicated with reasonable certainty that no figure could be satisfactorily fixed upon to represent its value when received and that under such circumstances the entire cost should be recovered before gain or loss on the transaction was reportable. See also *Kirkland* v. *Burnet,* 57 Fed. (2d) 608; *Sallie Strickland Tricou,* 25 B. T. A. 713; affirmed without discussion of this point, 68 Fed. (2d) 280.

There is some question regarding the market value of the common stock at the time it was received. However, in the view we take of the matter that is not now significant. For a proper allocation of cost we would have to determine the market value of both the stock and the warrants. Where there is no market value, as is the situation with respect to the warrants, there is no practical basis upon which an allocation can be made and the taxpayer is entitled to recover his

entire original basis before gain or loss will be recognized. *H. A. Green, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER and HILL, *JJ.*, dissent.