HAMILTON & MAIN, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49469.   Filed January 30, 1956.

*Benjamin Nadel, C. P. A.*, for the petitioner.

*Ellyne E. Strickland, Esq.*, and *Emil Sebetic, Esq.*, for the respondent.

## OPINION.

BRUCE, *Judge:* The first question with which we are presented is whether the sum of $10,000 received by petitioner as lessor from United Aircraft Corporation as lessee upon the cancellation and termination of the lease dated May 1, 1944, is taxable as ordinary income within the meaning of section 22 (a), Internal Revenue Code of 1939.

Pursuant to an agreement dated April 30, 1946, the petitioner as lessor received in May 1946 the sum of $10,000 from United Aircraft Corporation as lessee in consideration of the cancellation and termination of a 2-year lease beginning May 1, 1944, and the mutual release of each party from all obligations under the lease. It seems to us quite clear that this payment of $10,000 to petitioner was solely in settlement of United's obligation to repair and restore as provided by paragraph EIGHTH of the lease and no part of it was either rent or consideration for the termination of the lease.

Respondent contends that the $10,000 paid petitioner is ordinary income within the meaning of section 22 (a). Whether or not this sum is ordinary income to petitioner must be considered in the light of the claim or transaction from which it was realized. *Farmers' & Merchants' Bank of Catlettsburg, Ky.* v. *Commissioner*, 59 F. 2d 912; *Swastika Oil & Gas Co.* v. *Commissioner*, 123 F. 2d 382; *Durkee* v. *Commissioner*, 162 F. 2d 184.

The facts here are that by purchase petitioner acquired buildings in a damaged condition, land, and certain personal property. As another part of the same purchase petitioner acquired the right under the above-mentioned lease to require the tenant to repair and restore

the buildings.[1] The total consideration of $175,000 represents the cost to petitioner of one conglomerate parcel of property consisting of land, personalty, and of the damaged buildings and the right to have them restored, or as viewed differently, the buildings in a restored condition. See *H. Wilensky & Sons Co.*, 7 B. T. A. 693. If the tenant herein had made the necessary repairs and restoration the petitioner's basis in the restored buildings would have been the same as its combined basis in the damaged buildings and in the right to have them restored. The fact that petitioner voluntarily agreed to accept a money settlement in lieu of actual restoration did not alter the character of that which it had acquired, whether viewed as damaged buildings and the right to have them restored or as restored buildings, and as such the settlement constituted the sale or exchange of a capital asset. See *Guy L. Waggoner*, 15 T. C. 496; *Washington Fireproof Building Co.*, 31 B. T. A. 824. When so considered it must follow that all or a part of the $10,000 is a return of capital. Hence respondent's contention has no merit.

It is not to be overlooked, however, that capital recoveries in excess of cost do constitute taxable income. Normally this would call for a determination as to the cost of the capital asset sold. Such a determination is believed unnecessary in the instant case, however, insofar as ultimate tax consequences are concerned. *Burnet* v. *Logan*, 283 U. S. 404.

There is evidence that at the time of his second inspection Fleisher was of the opinion that the cost of repairing and restoring the buildings would be $15,000. Shortly thereafter a contractor's representative inspected the premises and estimated the cost of repair and restoration to be $12,385. It does not appear unreasonable, therefore, to assume that the cost of the capital asset sold was at least $10,000, the amount received from United. On the other hand, the record reveals that in the oral negotiations leading to the agreement of sale, and particularly to the purchase price, there was discussion of the damages to the buildings and the right under the lease for their repair and restoration. The record further reveals that the purchase price was fixed with reference to the transfer of this right. There were, however, no negotiations between the parties to the agreement of sale assigning any specific value to the right. Therefore if the assumption that the cost was at least $10,000 is not reasonable, then an allocation as to the cost of the right to have the buildings repaired and restored is not practicable or possible herein and the rule relating

---

[1] It matters not whether the work for which the tenant herein was obligated may properly be classified as *repairs* rather than *replacements*. *H. Wilensky & Sons Co.*, 7 B. T. A. 693.

to property acquired for a lump sum and subsequently disposed of a portion at a time would apply.

The established rule for determining profit where property is acquired for a lump sum and subsequently disposed of a portion at a time is that there must be an allocation of the cost or other basis over the several units and gain or loss computed on the disposition of each part. If, however, apportionment is wholly impracticable or impossible no gain or loss is to be realized until the cost or other basis has been recovered. *Nathan Blum*, 5 T. C. 702; *William T. Piper*, 5 T. C. 1104; *Inaja Land Co., Ltd.*, 9 T. C. 727; *United Mercantile Agencies, Inc.*, 23 T. C. 1105 (on appeal C. A. 6); *Warren* v. *Commissioner*, 193 F. 2d 966, reversing on other grounds 16 T. C. 563. See *Orvilletta, Inc.*, 47 B. T. A. 10. Accordingly as the sum received from United is less than the aggregate cost of the several units it cannot be determined that petitioner has in fact realized gain in any amount. Therefore, no portion of the payment in question should be considered as income but the full amount must be treated as a return of capital and applied in reduction of petitioner's aggregate cost basis.

We come next to the question whether the respondent properly determined the allowable depreciation on the buildings purchased by petitioner in 1946.

Respondent determined depreciation upon the buildings purchased by petitioner on the basis of a 50-year expected useful life. Petitioner assigned to the buildings a remaining useful life of 25 years commencing April 1946. On brief petitioner states: "The remaining useful life of twenty-five years was based upon the composite basis, that is, the construction and mechanical portions, such as electric lighting and power lines, plumbing, heating, etc., are grouped together."

In our opinion petitioner has failed to prove that it is entitled to a deduction for depreciation in excess of that allowed by respondent. The only evidence offered as to the construction of the buildings was that they were of a "mill type," brick walls, wood and concrete flooring, and wood supporting beams. No evidence was offered as to the "mechanical portion" as petitioner terms it. The only testimony with respect to the age of the buildings was by one of petitioner's officers that at the time of the purchase it was the opinion of an official of the Clock Company that the buildings were then 30 years old.

Accordingly, respondent's determination with respect to this issue is sustained.

*Decision will be entered under Rule 50.*