REPUBLIC AUTOMOTIVE PARTS, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7541–74.   Filed August 30, 1977.

*Sidney Bender,* for the petitioner.
*Daniel J. Westerbeck,* for the respondent.

#### OPINION

TIETJENS, *Judge:* The respondent determined a deficiency
in Federal income tax against the petitioner for taxable year
1969 in the amount of $77,239. The issue is whether amounts
received by petitioner from Borg-Warner Corp. as tort dam-
ages for wrongfully inducing the breach of a contract be-
tween the petitioner and a third party were capital gains or
ordinary income.

The petitioner, Republic Automotive Parts, Inc. (Republic),
is a Delaware corporation with offices at 20200 East Nine
Mile Road, St. Clair Shores, Mich. 48083. Petitioner filed its
corporate income tax return for taxable year 1969 with the
Internal Revenue Service Center in Cincinnati, Ohio.

The facts of this case have been fully stipulated pursuant to
Rule 122, Tax Court Rules of Practice and Procedure. The
stipulations and exhibits attached thereto are incorporated
herein by reference.

Organized in 1923, petitioner has been engaged in the
business of manufacturing (through others) and distributing
automotive . parts, primarily gears, for the replacement

market. During the early 1950's, petitioner was engaged in the export and sale of its products to Brazil. Petitioner had registered its trade name and insignia trademarks in Brazil and developed an active sales program there. By 1952, petitioner had become the largest seller of gears to Brazilian distributors.

In 1955, the Brazilian government acted to encourage local manufacture of auto parts and discourage imports. It did this primarily by imposing a duty on imported gears, which made them uncompetitive. Because of the restrictions, petitioner entered into a contract in July of 1955 with a Brazilian manufacturer, Maquinas York (York). Petitioner gave York an exclusive license on its "Republic" line of products in Brazil, including the manufacturing drawings, accumulated technology, trade name, and trademarks. In exchange for the license, petitioner was to receive a 5-percent royalty on sales of its products by York. The license was for a fixed 15-year term, and petitioner reserved the right to continue selling and exporting its products to Brazil. After 1955, however, petitioner made no sales of its product line to Brazil; all sales were instead made by York.

Although differences arose between petitioner and York, the parties continued to operate under the license for approximately 4 years. Finally, in 1959 Borg-Warner Corp. induced York to breach its contract with the petitioner by offering York licenses on transmissions as well as gears.

On May 6, 1964, petitioner sued Borg-Warner in tort for wrongfully inducing York to breach its contract with the petitioner. After a jury trial, a judgment for petitioner was entered in the amount of $400,000 compensatory damages. On January 8, 1969, the judgment was affirmed by the United States Court of Appeals for the Seventh Circuit. *Republic Gear Co. v. Borg-Warner Corp.*, 406 F.2d 57 (7th Cir. 1969), cert. denied 394 U.S. 1000 (1969). Borg-Warner has paid the $400,000 judgment in full. After certain concessions, the only issue remaining is whether $311,528 of the $400,000 judgment should be taxable to petitioner as ordinary income or capital gains.

The character of amounts realized from the result of litigation or a settlement thereof is determined by the character of the assets for which the amounts were paid.

*Farmers' & Merchants' Bank v. Commissioner,* 59 F.2d 912 (6th Cir. 1932); *Estate of Carter v. Commissioner,* 35 T.C. 326 (1960), affd. 298 F.2d 192 (8th Cir. 1962), cert. denied 370 U.S. 910 (1962); *Raytheon Production Corp. v. Commissioner,* 1 T.C. 952 (1943), affd. 144 F.2d 110 (1st Cir. 1944), cert. denied 323 U.S. 779 (1944). Thus damages recovered for loss of profits, whether recovered in tort or contract, are taxable as ordinary income; *Commissioner v. Gillette Motor Transport, Inc.,* 364 U.S. 130 (1960); *Estate of Carter v. Commissioner, supra; Raytheon Production Corp. v. Commissioner, supra;* while those recovered for damage to the goodwill of a business are taxable as capital gains to the extent that the damages exceed the basis (if any) of the goodwill. *Durkee v. Commissioner,* 162 F.2d 184 (6th Cir. 1947), revg. 6 T.C. 773 (1946); *Farmers' & Merchants' Bank v. Commissioner, supra.*

In determining whether the judgment awarded the petitioner is to be characterized as ordinary income or capital gains, we must therefore look to the underlying asset for which the judgment was awarded. See also *Swastika Oil & Gas Co. v. Commissioner,* 123 F.2d 382 (6th Cir. 1941). Petitioner contends that it received the $400,000 judgment for the destruction of petitioner's entire business and goodwill in Brazil. Actually, the judgment was entered for the interference by Borg-Warner with the petitioner's and York's contractual relationship, which resulted in a repudiation of the contract by York. See *Republic Gear Co. v. Borg-Warner Corp., supra.* Thus the judgment was received as compensation to petitioner for the loss of its valuable contract rights.

Under the contract, petitioner granted York a license to use petitioner's manufacturing drawings and accumulated technology (knowhow), trade name, and trademarks. It is very clear from the agreement that only a license was granted; no sale was intended. Petitioner retained the right to inspect the products manufactured by York under the Republic label. Any failure by York to maintain the quality standards established by the petitioner was considered a breach of the contract, allowing the petitioner to terminate it. York could not assign its interest without the petitioner's written consent. And the contract was for a fixed term of 15 years. All of this leads to the inescapable conclusion that petitioner did not sell its trade name, trademark, and knowhow to York but

merely licensed York to use them during the term of the contract; petitioner retained substantial rights in those assets.[2] See *Pickren v. United States*, 378 F.2d 595 (5th Cir. 1967); *Taylor-Winfield Corp. v. Commissioner*, 57 T.C. 205 (1971), affd. 467 F.2d 483 (6th Cir. 1972); *PPG Industries, Inc. v. Commissioner*, 55 T.C. 928 (1970).

Moreover, we think that upon formation of the contract, petitioner's trade name, trademark, and knowhow each had a useful life well in excess of the contract's 15-year term. Although the Brazilian government in 1955 began imposing duties on imported gears, this did not destroy the goodwill or reputation previously established by petitioner in that country. Practically, it prevented petitioner from distributing American manufactured gears in Brazil. But petitioner's trade name and trademark were still indefinitely available for use in Brazil by the petitioner or its assigns. The same is true with respect to the petitioner's drawings and accumulated technology. There is nothing in the stipulated facts to indicate that upon formation of the contract, petitioner's technical knowhow would be worthless at the end of the contract. Thus we find the contract to be a license to use petitioner's trade name, trademark, and technical knowhow, not a sale of them.

Amounts realized by a lessor from the sale, exchange, or other disposition of a lease to use a capital asset do not qualify for capital gains treatment. *Hort v. Commissioner*, 313 U.S. 28 (1941). The same result is obtained upon the disposition by a licensor of a license to use capital assets. Compare *Pickren v. United States, supra,* and *PPG Industries, Inc. v. Commissioner, supra,* with *Estate of Carter v. Commissioner, supra.* Like the lease in *Hort,* a license to use a capital asset is merely a right to future income payments. See also *Kathman v. Commissioner,* 50 T.C. 125 (1968); *Aircraft Mechanics, Inc. v. Commissioner,* 30 T.C. 1227 (1958). Thus amounts received from its disposition cannot qualify for capital gains treatment. The result might be different if the licensor retained no substantial rights in the licensed assets and their useful lives did not extend beyond the term of the license. Cf. *Pickren v. United States, supra* at 600. The license would in substance be

---

[2] Sec. 1253, added to the Internal Revenue Code of 1954 by sec. 516(c)(1) of the Tax Reform Act of 1969, was not in effect during the taxable year in issue.

a sale, and proceeds from its disposition would be characterized as capital gains or ordinary income depending on the character of the licensed assets. But, again, the petitioner has retained substantial rights in the licensed assets, and their useful lives, upon formation of the contract, extended well beyond its term.

Petitioner alternatively contends that the proceeds from its judgment award are entitled to capital gains treatment under section 1231. In order to so qualify, the gains must be realized from the sale, exchange, or involuntary conversion of "property used in the trade or business" of the taxpayer or from the involuntary conversion of a capital asset. Sec. 1231. We do not consider petitioner's rights in its contract with York to be a section 1231 asset. In this regard we find *Commissioner v. Gillette Motor Transport, Inc., supra* at 134–135, indistinguishable from the case at hand. Although it may be called property in the ordinary sense, a licensor's right to payments under a license agreement for the use of licensed assets is not property for purposes of sections 1221 and 1231 and, therefore, may not be accorded capital gains treatment. See also *Commissioner v. P. G. Lake, Inc.,* 356 U.S. 260 (1958).

*Decision will be entered for the respondent.*