TELEFILM, INC., A CALIFORNIA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35902.    Promulgated February 11, 1954.

*Donald Armstrong, Esq.*, for the petitioner.
*Earl C. Crouter, Esq.*, for the respondent.

692

OPINION.

RAUM, *Judge:* The question presented is whether all or any part of the net proceeds of the settlement, $62,043.77, constitutes taxable income. The respondent contends that the entire amount consisted of taxable compensation for profits which the petitioner otherwise would have received. The petitioner contends that this amount constituted nontaxable compensation for the tortious destruction of the portion of the business of its predecessor devoted to the photography of horse races.

The tax consequences which attach to the lump-sum payment received by petitioner depend upon the nature of the payment. To what extent, if at all, did it represent punitive or exemplary damages, compensation for loss of profits, or compensation for destruction of the company's business? At the time of the settlement and execution of the release for $100,000, the parties did not specify what part of that amount was allocable to any of the foregoing elements, although the "whereas" clause of the release referred to a cause of action for appropriation of the company's business and good will, resulting in alleged loss of profits. In the circumstances, the nature of the recovery will have to be determined from the claims made in the pleadings, the issues presented to the jury, and from such assistance as we are able to obtain from the release itself. Cf. *Raytheon Production Corp.* v. *Commissioner,* 144 F. 2d 110, 114 (C. A. 1), certertiorari denied, 323 U. S. 779, affirming 1 T. C. 952.

Although the pleadings are not too clear, we think that, fairly construed, they asserted a claim of $250,000 for lost profits, $250,000 for injury to business and good will (or in the alternative, in lieu of the two foregoing items, $500,000 for destruction of business and good will), and $500,000 as exemplary damages. On the other hand, at the trial, the principal claim presented to the jury was one for destruction or pirating of business and goodwill; evidence as to loss of profits was submitted primarily to show the extent of damage to business and goodwill. Cf. *Raytheon Production Corp.* v. *Commissioner, supra,* at p. 113. The jury verdict was in the amount of $250,000 as compensatory damages (without specification as to whether such damages were for loss of profits or destruction of business) and $50,000 as exemplary damages.

In the circumstances, we are satisfied that the settlement amount includes several different components. It cannot be treated in its entirety as income resulting from the recovery of lost profits, as respondent urges; nor can it be regarded in its entirety as a penalty, cf. *Central Railroad Co. of New Jersey* v. *Commissioner,* 79 F. 2d 697 (C. A. 3), or as a nontaxable recovery for injury to business, cf.

*Farmers' & Merchants' Bank* v. *Commissioner*, 59 F. 2d 912 (C. A. 6), as urged by petitioner.

As already noted, the suit was to recover not only compensatory damages, but also punitive damages, and the reasonable assumption is that the amount paid in settlement was intended to satisfy both of these claims. Since the tax consequences attributable to the receipt of amounts in satisfaction of each claim differ, an allocation is necessary and proper. *Durkee* v. *Commissioner*, 162 F. 2d 184, 187 (C. A. 6); *Glenshaw Glass Co.*, 18 T. C. 860, 871; *Obear-Nester Glass Co.*, 20 T. C. 1102. Some basis for allocation is found in the verdict of the jury in the original lawsuit awarding the company $250,000 as compensatory damages and $50,000 as punitive damages. Using this basis as the most reasonable one available we find that one-sixth of the net proceeds of the settlement represented a payment in the nature of punitive damages, and therefore does not constitute taxable income. *Highland Farms Corporation*, 42 B. T. A. 1314; *Glenshaw Glass Co.*, *supra*; *William Goldman Theatres, Inc.*, 19 T. C. 637, 641; cf. *Central Railroad Co. of New Jersey* v. *Commissioner*, *supra*.

As to the precise nature of the remaining five-sixths, which must be regarded as compensatory damages, the record is in an unsatisfactory state. On the one hand, the complaint as originally filed by the company sought compensatory damages in the amount of $500,000, relating in part to loss of profits and in part to destruction or injury to business. Those allegations in the original complaint were left unchanged by the supplemental complaint, which added two new paragraphs. However, the two new paragraphs added by the supplemental complaint and the presentation of the case to the jury placed predominant emphasis upon destruction of business and good will as the gist of the action. And to make matters even more confusing, the recitation in the "whereas" clause of the release refers to the pirating of the company's business merely as the cause for the alleged loss of profits.

Exercising our best judgment on the evidence before us we have concluded and found as a fact that one-half of the five-sixths representing compensatory damages consists of damages for loss of profits and the other one-half consists of damages for destruction of business and goodwill. To the extent that the damages are for loss of profits they plainly constitute taxable income. Cf. *United States* v. *Safety Car Heating & L. Co.*, 297 U. S. 88; *Arcadia Refining Co.* v. *Commissioner*, 118 F. 2d 1010 (C. A. 5); *H. Liebes & Co.* v. *Commissioner*, 90 F. 2d 932 (C. A. 9); *Banta Refrigerator Co.*, 15 B. T. A. 1038; *Armstrong Knitting Mills*, 19 B. T. A. 318; *W. W. Sly Manufacturing Co.*, 24 B. T. A. 65.

A somewhat more difficult problem is presented as to the remaining

one-half of the compensatory damages allocable to destruction of the company's business. Surely, to the extent that damages for the destruction of property, whether tangible or intangible, do not exceed the cost or other unrecovered basis of such property, they are merely a return of capital and are not taxable at all. But to the extent that such damages exceed the unrecovered basis of the property the excess represents a profit which constitutes taxable income. This was clearly spelled out in the *Raytheon* case where, after pointing out that an amount received in settlement of a damage suit for the destruction of business and goodwill represented a return of capital, the Court of Appeals went on to say (144 F. 2d at p. 114):

> But, to say that the recovery represents a return of capital in that it takes the place of the business good will is not to conclude that it may not contain a taxable benefit. Although the injured party may not be deriving a profit as a result of the damage suit itself, the conversion thereby of his property into cash is a realization of any gain made over the cost or other basis of the good will prior to the illegal interference. Thus A buys Blackacre for $5,000. It appreciates in value to $50,000. B tortiously destroys it by fire. A sues and recovers $50,000 tort damages from B. Although no gain was derived by A from the suit, his prior gain due to the appreciation in value of Blackacre is realized when it is turned into cash by the money damages.

And in *Durkee* v. *Commissioner, supra,* the Court of Appeals said (162 F. 2d at p. 187):

> It is also urged upon us that a sale or conversion into cash of capital assets, which have increased in value over a period of time, is a realization of the gain in value over the cost or other applicable basis of such assets, and such realized gain becomes taxable income. * * * We agree that the rule is applicable in this case. * * *[2]

*Farmers & Merchants' Bank* v. *Commissioner*, 59 F. 2d 912 (C. A. 6), relied upon by petitioner, was an earlier decision by the Court of Appeals for the same circuit that decided the *Durkee* case and must be read in the light of the *Durkee* and *Raytheon* cases.

The burden was on the petitioner to establish the cost or other basis of the business and goodwill for the destruction of which it was compensated.[3] Its president, who was also the president of the predecessor company, testified that the company expended approximately $15,000 in a promotional campaign which consisted of advertising and sending representatives to "contact" race track operators with the object of selling them the idea of photographing horse races. All

[2] The *Durkee* case was remanded to the Tax Court for further proceedings to determine the proper allocation between taxable and nontaxable portions of an amount received in settlement of litigation.

[3] The physical assets of the business, consisting of 2 developing machines and 8 cameras altered so as to be adaptable to race track photography, were retained by the company and it and the petitioner have been recovering the cost of this equipment through deductions for depreciation in returns for 1945 and subsequent years. Petitioner is not entitled to recover the cost of this equipment twice. Moreover, these assets were not destroyed, and it does not appear that any part of the compensation received was attributable to them (cf. *Raytheon Production Corp.* v. *Commissioner*, 144 F. 2d 110, 114, footnote 2).

such expenditures were charged to expense on the books of the company and claimed as deductions in the year in which they were made.

The foregoing strongly suggests that there is no unrecovered basis for the destroyed property that must be taken into account in order to determine the amount of taxable profit attributable to the damages in question. Certainly the petitioner, upon whom the burden rests, has not shown any unrecovered basis, and in these circumstances we must hold that the portion of the compensatory damages paid for the destruction of business and goodwill represents taxable income.

*Decision will be entered under Rule 50.*