Ione Thomson, Cynthia Farver, Walter Thomson, Trustees for Dissolved Aero Sales Co., et al. [1] v. Commissioner. Thomson v. Commissioner
Docket Nos. 1337-63 - 1340-63.
United States Tax Court
T.C. Memo 1965-237; 1965 Tax Ct. Memo LEXIS 96; 24 T.C.M. (CCH) 1203; T.C.M. (RIA) 65237; August 30, 1965
Earl C. Crouter, for the petitioners. Arthur P. Generaux, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in the income tax of petitioners in the years and in the amounts as follows: Docket No.
Year
Deficiency
1337-63
1954
$ 339.60
1337-63
1955
3,391.53
1338-63
1953
840.05
1338-63
1954
942.80
1338-63
1956
355.00
1339-63
1953
840.04
1339-63
1954
942.81
1339-63
1956
355.00
1340-63
1955
18,190.86
*97 The four dockets were consolidated for trial and briefing. The issues for decision are: (1) whether the payment of $1,182 received by Aero Sales Company in 1954 in settlement of litigation pending in the Court of Claims is taxable as ordinary income; (2) whether all or any part of the $47,686.55 payment which Aero Sales Company (Docket No. 1337-63) and Walter Thomson and Ione Thomson (Docket No. 1340-63) received during the taxable year 1955 in settlement of an antitrust suit is taxable as ordinary income; (3) whether Walter Thomson and Ione Thomson are entitled to greater depreciation deductions on the plant and equipment of Texas Tank Company, due in part to alleged obsolescence, for the years 1953 and 1954; and (4) whether Walter Thomson and Ione Thomson are entitled to deduct certain expenditures as ordinary and necessary business expenses in carrying on a trade or business or as expenses incurred for the production or collection of income. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by this reference. Petitioners Walter Thomson and Ione Thomson (hereinafter sometimes referred to as the individual petitioners) *98 are husband and wife residing in Los Angeles, California. The individual petitioners each filed individual Federal income tax returns on the cash basis for the calendar years 1953, 1954, and 1956, and they filed a joint Federal income tax return on the cash basis for the calendar year 1955, all returns being filed with the district director of internal revenue, San Francisco, California. Aero Sales Company (hereinafter referred to as ASCo.), now dissolved but represented by individual trustees (the individual petitioners, and Cynthia Farver), was a Texas corporation which filed its Federal income tax returns on the cash basis for the calendar years 1954 and 1955 with the district director of internal revenue, San Francisco, California. Walter is an engineer who graduated in 1921 from the Colorado School of Mines, Golden, Colorado, specializing in geology. During the years 1921 through 1941, Walter (1) was employed by certain oil companies, (2) became interested in a malleable castings company, (3) was a real estate broker doing appraisal work for which he was qualified, and (4) bought and sold oil leases. Walter also testified as an expert witness in some court cases, including *99 two before the Board of Tax Appeals and this Court. Shortly after World War II, upon being assured by several steel companies of an available supply of steel, Walter constructed a plant outside of Houston, Texas, which was known as Texas Tank Company (hereinafter referred to as TTCo.). TTCo. operated in the form of a proprietorship and was organized to manufacture propane and butane tanking equpment. TTCo. began manufacture of propane and butane tanks and continued operation until prior to January 1, 1947. In 1947 Walter organized ASCo., a Texas corporation located in Dallas. ASCo.'s initial primary purpose was to handle scrap metal from various airplane plants. In 1947 ASCo. was moved from Dallas to Houston, and TTCo. was used to store steel and other materials owned by ASCo. Issue 1. Court of Claims Case On August 10, 1949, ASCo. commenced a civil action against the United States in the Court of Claims of the United States. The petition set forth six separate causes of action and claimed damages in the amount of $14,956.99. The first cause of action claimed damages for unpaid commissions in the amount of $2,775.07. The remaining five causes of action alleged that certain *100 shipments of metal (principally steel) were received from the War Assets Administration, an agency of the United States, which metal was either defective or did not meet specifications of the sales document forwarded by that Administration. In regard to said shipments of metal, ASCo. claimed damages for the following: (1) unpaid commissions and damages for imperfect merchandise; (2) various items of cost incurred in connection with several shipments relating to freight charges, storage, handling and loading, and use of heavy equipment; and (3) in one instance, the sales price of $3,004.87 paid on a shipment which was returned to the War Assets Administration. Prior to trial of the foregoing suit, the United States filed a civil action against ASCo. in the United States District Court, Houston, Texas, to collect an unpaid invoice due and owing the War Assets Administration in the approximate amount of $7,000. Issue 2. Antitrust Suit Complaint On January 18, 1950, ASCo. and the individual petitioners, d/b/a TTCo., commenced a civil action in the United States District Court against a dozen or more steel companies, including: Columbia Steel Company; Armco Steel Corporation; Sheffield *101 Steel Corporation; Bethlehem Steel Company; Republic Steel Corporation; Inland Steel Company; and United States Steel Corporation. The complaint was filed under certain sections of the Clayton Act., i.e., Act of October 15, 1914, c. 323, Sect. 4, 38 Stat. 731, 15 U.S.C. Sect. 15, for triple damages for violation by defendants of the Act of July 2, 1890, c. 647, 26 Stat. 209, 15 U.S.C. Sect. 1, commonly known as the Sherman Anti-Trust Act, Sect. 1. The complaint alleged that the defendants and coconspirators engaged in an unlawful combination and conspiracy to restrain interstate trade and commerce in steel products by refusing to sell such steel products to any customers other than "old," "regular," or "historical" customers. The complaint, as amended, claimed damages as follows: Expected
Loss of Value
Simple
Damages
Profits
of Assets
Damages
Trebled
ASCo.
$ 665,700
$101,500
$ 767,200
$2,301,600
Walter & Ione, d/b/a TTCo.
1,881,800
130,000
2,011,800
6,035,400
Total
$2,547,500
$231,500
$2,779,000
$8,337,000
The plaintiffs therein presented their evidence to a jury. At the trial Walter (as *102 a plaintiff therein) was not allowed to testify as to the amount of estimated profits which TTCo., but for the acts of the defendants, would have earned. The trial court judge sustained defendants' objections to such estimate on the grounds that no sufficient foundation was laid. However, plaintiffs were allowed to introduce into evidence a report prepared by one of the defendant steel companies containing an estimate of TTCo.'s potential profits. That report would support a verdict of $500,000 for loss of profits; however, the trial judge was skeptical as to the value of said report in determining damages. At the close of their evidence, all the defendants filed motions to dismiss. Said motions were argued orally before the District Court. Before the Court ruled on the motions to dismiss, the parties entered into a compromise settlement wherein the plaintiffs received $75,000, less attorneys' fees and costs, for a net payment of $47,686.55. The antitrust case which had commenced on January 18, 1950, was closed in March 1955 when the parties executed a general release and a dismissal with prejudice was filed. The release recited formal matters only and stated for its consideration *103 the sum of $10. Issue 3. Depreciation The assets of TTCo. involved in the depreciation issue for the years 1953 and 1954, together with the estimated useful life determined by respondent and that which is claimed by the individual petitioners, are reflected in the following table: Estimated
Estimated
Life-Yrs.
Life-Yrs.
Property
Cost
Acquired
(Petr.)
(Resp.)
Shop building
$32,499.74
7/1/46
10
33 1/3
Electric wiring
15,104.93
7/1/46
4
15
Machinery & equipment
48,491.86
7/1/46
10
12 1/2
Warehouse bldg.
702.25
7/1/46
10
33 1/3
Office bldg.
$ 1,881.61
7/1/46
10
25
Road
1,043.45
1/1/46
2
5
Water well & tank
1,448.91
7/1/46
5
10
The TTCo. plant was built largely out of second-hand materials. Part of the materials used in the original construction were replaced prior to the years in issue. Most of the machinery and equipment was secondhand when purchased by Walter for TTCo. TTCo., which ad begun manufacturing butane and propane tanks in 1946, ceased production by January 1, 1947. From July 1, 1949, to November 1, 1951, the individual petitioners leased the entire plant to Berg Manufacturing Company, *104 which resulted in total rentals of approximately $23,000. On November 1, 1951, the plant was leased to the Automotive Rubber Company. The lease continued through 1957 and provided for annual rental of $11,000, with the lessee paying taxes and insurance. The lease included all of the assets in issue with the exception of machinery and equipment. With reference to cost, approximately 10 percent of the machinery and equipment was included under the terms of the lease. Automotive Rubber Company had no use for extra-strength foundations within the TTCo. plant nor for the plant's heavy electrical wiring, which items were constructed and installed to accommodate ASCo.'s heavy equipment. In the latter part of 1957 the remaining assets of TTCo. were leased to Glass Brothers Company. The lease provided for a rental of $500 per month on an annual basis, together with a percentage of the gross business receipts. Issue 4. Business Expenses The business and investment expense deductions claimed by the individual petitioners in the total amount of $29,034.46 for all the years in issue were and are based upon actual expenditures made during the respective years in the amounts set forth *105 in their returns. The foregoing deductions are comprised of expenses for office rent, telephone and telegraph, stationery and office supplies, automobile travel, and sales and advertising. Walter lived and had an office in San Francisco, California, during all of the taxable years involved herein. This was done partly for the purpose of living close to the place of trial for the antitrust case and his attorneys in that case. From 1953 through March 1955, Walter spent considerable time in interviewing witnesses for the trial of the antitrust case. He travelled to many states for that purpose. During 1953 and 1954, Walter travelled to Texas in order to sell the unused portion of TTCo.'s machinery and equipment. During the years involved herein, Walter reestablished himself as a professional independent appraiser and actively sought to gain employment in such capacity. In 1954 he was engaged by Long Beach Banana Distributors as an appraiser. The individual petitioners failed to include the payment of $47,686.55 received in settlement of the antitrust suit in their taxable income for the year 1955 on the basis that such amount constitutes a nontaxable recovery of capital. ASCo. *106 failed to include $1,182 which it received in 1954 in compromise settlement of the Court of Claims case on the ground that such amount was a nontaxable capital recovery. The individual petitioners claimed total depreciation in the amounts of $5,241.63 and $5,045 on the TTCo. plant for the years 1953 and 1954, respectively. The individual petitioners also claimed business and investment expenses in the amount of $29,034.46 for the years involved. Respondent has included in ASCo.'s taxable income for the year 1955 the sum of $11,330.11 and has included in the individual petitioners' (d/b/a TTCo.) taxable income for the year 1955 the sum of $36,356.44 on the grounds that such amount represents recovery of lost profits. Respondent included in ASCo.'s taxable income for the year 1954 the sum of $1,182 on the grounds that such amount represents recovery of lost profits. Respondent had disallowed a portion of total depreciation deductions claimed by the individual petitioners on TTCo.'s assets in the amounts of $2,637.27 and $2,440.64 for the years 1953 and 1954, respectively. Respondent has disallowed individual petitioners' certain expenses for the years involved in the aggregate amount *107 of $26,598.33 on the basis that said deductions are not ordinary and necessary business expenses incurred in a trade or business. Opinion Issue 1 The first issue before us is whether or not $1,182 which ASCo. received in 1954 in settlement of a civil action pending in the Court of Claims is taxable as ordinary income. Respondent argues that the entire sum is taxable as ordinary income because (1) such amount represents a recovery of lost profits and (2) the trustees for ASCo. have failed to prove otherwise. The trustees claim that the entire $1,182 represents a nontaxable return of capital. It is clear that the taxability of a sum received in settlement of a lawsuit depends upon the nature of the claim and the actual basis of recovery. Ralph Freeman, 33 T.C. 323 (1959). The trustees have the burden of proving what portion, if any, of the amount received in settlement of the litigation in question constituted nontaxable income. Welch v. Helvering, 290 U.S. 111 (1933). The Court of Claims case was settled before trial. The settlement agreement is not in the record nor is there any other documentary evidence to indicate specifically the purpose *108 or purposes of the payment. The petition filed in the Court of Claims set forth six separate causes of action and prayed for total damages for unpaid commissions in the sum of $2,775.07. There is no question (nor do the trustees dispute) that a recovery of damages representing a claim for a loss of income or unpaid income is taxable as ordinary income when received. The remaining five causes of action set forth in the petition claimed damages for various items of cost incurred in connection with several shipments of defective metals, including freight, storage, handling and loading charges, and, in one instance, the sales price of $3,004.87 paid on a shipment which was returned to the War Assets Administration. If the foregoing expense items had been taken as deductions, and if such deductions produced tax benefits, any recovery of damages in subsequent years would be properly taxable as ordinary income. Western Products Co., 28 T.C. 1196 (1957). It has not been shown to our satisfaction that such items of expense were not deducted in prior years and, if deducted, did not produce tax benefits. [2] Therefore, any portion of the compromise settlement in the Court of Claims *109 suit related to the foregoing expense items is properly taxable as ordinary income. Walter testified that part of the settlement proceeds represented a recovery for damages to ASCo.'s own steel, resulting from a commingling with mislabeled and defective steel sent to ASCo. by the War Assets Administration. It is our opinion that the petition in the Court of Claims case contained no such allegation. Moreover, Walter's testimony is, at best, vague and ambiguous and presents no sufficient basis to establish any such injury or loss. Therefore, we believe that the trustees have completely failed to establish that the $1,182 settlement in the Court of Claims suit was a nontaxable recovery of capital. Consequently, we hold for respondent on this issue. Issue 2 The second issue presented is whether all or any portion of the net proceeds of the settlement in the antitrust case, $47,686.55, constitutes taxable income. Petitioners contend that said proceeds constitute a nontaxable return of capital because only damage claims for injury to business (capital) were before the District Court. Respondent *110 contends that the entire amount received consisted of taxable compensation for profits which petitioners otherwise would have received; or, in the alternative, since petitioners claimed both compensatory and punitive damages (treble damages), two-thirds of the settlement proceeds are includable in gross income. The tax consequences which attach to the lump-sum payment received by petitioners depend upon the nature of the claim and the actual basis of recovery. Ralph Freeman, supra.The question before us is to determine to what extent, if at all, did such payment represent (1) punitive or exemplary damages, (2) compensation for loss of profits, and (3) compensation for injury to the business. At the time of the settlement and execution of the release, the parties failed to specify what part of that amount was allocable to any of the foregoing elements. In these circumstances, the nature of the recovery will have to be ascertained from the claims made in the pleadings and the issues presented to the jury. Telefilm, Inc., 21 T.C. 688 (1954). We are satisfied that the payment received in settlement of the antitrust case is comprised of several different *111 components. Such amount cannot be treated in its entirety as a nontaxable recovery for injury to business, as urged by petitioner; nor can it be treated in its entirety as income from the recovery of lost profits as respondent contends; nor can we say that no portion represents punitive damages. The pleadings asserted a claim of $2,547,500 for lost profits, $231,500 for injury to the business, and $5,558,000 for punitive damages. [3] Since the antitrust suit was to recover not only compensatory damages but also punitive damages (treble damages), the reasonable assumption in these circumstances is that the amount paid in settlement was intended to satisfy both claims. Telefilm, Inc., supra; Obear-Nester Glass Co., 20 T.C. 1102 (1953), reversed on other grounds 217 F. 2d 56 (C.A. 7, 1954), certiorari denied 348 U.S. 982 (1955). The most reasonable basis for allocating a portion of the settlement proceeds to punitive damages is found (1) in the antitrust case and (2) in the nature of such damages under antitrust law. Had petitioners successfully maintained their claims of actual damages, treble damages would have been awarded automatically. *112 See Clark Oil Co. v. Phillips Petroleum Co., 148 F. 2d 580 (C.A. 8, 1945); Bigelow v. RKO Radio Pictures, 150 F. 2d 877 (C.A. 7, 1945), reversed on other grounds 327 U.S. 251 (1946). Since a lump sum received in settlement of litigation differs only in degree but not in kind from any judgment that might have been rendered, we find that two-thirds of the net proceeds of the settlement represented a payment in the nature of punitive damages and, therefore, such amount is taxable as ordinary income. Telefilm, Inc., supra; Obear-Nester Glass Co., supra.
As to the precise nature of the remaining one-third of the settlement proceeds (which must be regarded as compensatory damages), the record is in an unsatisfactory state. Since the tax consequences attributable to the receipts of amounts satisfying claims for lost profits and those satisfying claims for injury to capital differ, an allocation is necessary and proper. Telefilm, Inc., supra; Durkee v. Commissioner, 162 F. 2d 184 (C.A. 6, 1947), reversing and remanding 6 T.C. 773 (1946), 181 F. 2d 189 *113 (C.A. 6, 1950), affirming per curiam a Memorandum Opinion of this Court on remand. In the complaint approximately 91 percent of the compensatory damages claimed represented damages for loss of profits and approximately 9 percent represented damages claimed for loss or injury to the business. On the other hand, at the trial of the antitrust case, petitioners were limited in the amount of evidence which could be introduced regarding lost profits, and the evidence of lost profits which was introduced was insubstantial in terms of the amounts claimed in the pleadings. Exercising our best judgment on the evidence before us, we have concluded and found as a fact that one-half of the one-third (one-sixth) representing compensatory damages consists of damages for loss of profits and the other one-half consists of damages for loss or injury to the business. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). To the extent that the damages are for injury to the business, they are plainly nontaxable.[4]Telefilm, Inc., supra; Durkee v. Commissioner, supra.To the extent that the damages are for loss of profits they are taxable as ordinary income. *114 Issue 3 The third issue for decision is whether the individual petitioners are entitled to depreciation deductions in the amounts claimed for the taxable years 1953 and 1954 in respect of TTCo.'s plant and equipment. They argue (1) that TTCo.'s machinery and equipment and the materials used in constructing the TTCo. plant were largely second-hand and, therefore, had shorter useful lives than respondent's depreciation allowance subsumes and (2) that the steel combination complained of in the antitrust suit caused the TTCo. plant and its machinery and equipment to become obsolescent, thereby justifying increased depreciation deductions. With respect to the individual petitioners' first argument, we do not question their position that second-hand assets have shorter useful lives than first-hand assets. However, we are not persuaded that the particular assets in issue ought to be depreciated at any faster rate than respondent allowed. With regard to machinery and equipment, the individual petitioners have failed to convince us that even those particular assets testified to, when considered separately, warrant a greater rate of depreciation than provided by the 12 1/2 year composite *115 rate allowed by respondent. We are concerned here with a composite rate of depreciation.[5] In challenging a composite rate, a taxpayer must prove error in the average. It does not suffice for a taxpayer to show that if certain items of a group were considered separately, a greater rate of depreciation (for those items) would be allowed. Union Company, 14 B.T.A. 1310 (1929). With regard to the TTCo. plant, no evidence whatsoever has been introduced by which the useful life of said structures could be determined. Nor is there any evidence concerning the amount which could be attributed to anticipated salvage value of the assets in issue. Wier Long Leaf Lumber Co., 9 T.C. 990, 997-999 (1947), reversed on another issue 173 F. 2d 549 (C.A. 5, 1949). The individual petitioners contend that the factor of obsolescence is applicable because TTCo. was put out of business due to an inability to obtain steel necessary for production. In every case the determination of whether property has sustained obsolescence is a question of fact to be determined on the evidence. *116 First National Bank of Key West, 26 B.T.A. 370 (1932). We believe that factual substance of obsolescence is completely lacking in this case. While the inability to obtain steel may prevent the individual petitioners from using the property (including machinery and equipment) for the purpose originally intended, such failure to acquire steel does not make the property itself obsolete. Although the evidence does indicate that the assets of TTCo. were not used for the purpose originally intended, there is no evidence that the property in question had become obsolete (1) by losing economic usefulness for the purpose for which it was acquired and (2) by being useless for any other purpose. Moreover, the evidence affirmatively shows that a large percentage of the property was useful for a variety of purposes since (1) the plant was leased by three tenants between 1949 and 1958, each paying substantial rentals when considering petitioners' total investment, and (2) Walter was successful in selling some of TTCo.'s machinery and equipment at a capital gain. The mere fact that the above-said tenants during the years in issue had no use for certain structural or electrical components *117 of the TTCo. plant does not prove, or require us to find, that such components were without use to any other potential tenants, vendees, or to the individual petitioners at some future date. The individual petitioners' reliance upon Gambrinus Brewery Co. v. Anderson, 282 U.S. 638 (1931) is misplaced. There, a brewery company was held to be entitled to an allowance for depreciation of buildings resulting from the imminent effect of national prohibition. Unlike the instant case, the taxpayer there clearly established that the assets in issue would have no salvage value when prohibition took effect. Therefore, we hold for respondent on this issue. Issue 4 The final issue is whether the individual petitioners are entitled to deduct certain expenditures for the years 1953, 1954, 1955, and 1956 in the total amount of $29,034.46 as ordinary and necessary expenses in carrying on a trade or business under section 162(a) [6] or as expenses for the production or collection of income under section 212. Section 162(a) grants a deduction for "all ordinary and necessary expenses *118 paid or incurred during the taxable year in carrying on any trade or business." Respondent disallowed $26,598.33 of said deductions on the grounds that the individual petitioners did not establish that they were in a "trade or business." The individual petitioners maintain that they were engaged in several business and profit-seeking activities during the years in issue. The question of whether a taxpayer is engaged in carrying on a trade or business is one of fact. Morton v. Commissioner, 174 F. 2d 302, 303 (C.A. 2, 1949), affirming a Memorandum Opinion of this Court, certiorari denied 338 U.S. 828 (1949). The record indicates that Walter had moved to San Francisco by 1953 and opened an office so that he could assist his attorneys in the antitrust litigation heretofore discussed. The office was located in a building, one-half of which was used as a residence and the other half as an office. Walter assisted in the antitrust case primarily by interviewing witnesses and by soliciting witnesses to testify in said case. Walter was required to travel to various parts of the United States in connection with the antitrust suit. The antitrust case was settled *119 prior to April 1, 1955. Respondent substantially concedes the deductibility of the individual petitioners' expenditures in regard to the antitrust litigation as ordinary and necessary business expenses under section 162(a) and we are convinced that such expenses are clearly deductible as such. During the years involved herein, Walter incurred various travel expenses in connection with the sale of machinery and equipment formerly used by TTCo. We believe these expenses are deductible as either business expenses under section 162(a) or expenses incurred in the production of income under section 212(1). [7] See Dezso Goldner, 27 T.C. 455 (1956). Prior to 1942 Walter had been active in appraisal work. During the years in issue, Walter resumed his former profession and held himself out as an appraiser in an effort to obtain such work. In 1954 Walter was engaged by Long Beach Banana Distributors to act as *120 an independent appraiser. Walter incurred diverse expenses in soliciting appraisal work and in connection with his appraisal work for Long Beach Banana Distributors. We have concluded and found as a fact that Walter was an appraiser during the years in issue, which profession constitutes a trade or business within the meaning of section 162(a). Therefore, his expenses relating thereto are deductible under section 162(a). * The individual petitioners claimed expenses in connection with other activities during the years in issue. Walter's testimony as to the substance of such activities is vague and nebulous, and we are not at all convinced that the individual petitioners are entitled to deductions relating to such alleged business or investment pursuits. Thus, we believe to be deductible only those expenses incurred in connection with (1) Walter's appraisal business, (2) his sales of machinery and equipment formerly used by TTCo., and (3) his activities in the antitrust litigation. We leave for the parties the task of determining which expenses are allocable to the foregoing activities. *121 Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Ione Thomson, Docket No. 1338-63; Walter Thomson, Docket No. 1339-63; and Walter Thomson and Ione Thomson, Docket No. 1340-63.↩
2. The trustees of ASCo. rely solely upon Walter's testimony to establish such fact.↩
3. Computed by doubling compensatory (or simple) damages.↩
4. Respondent makes no claim that any portion of the settlement proceeds exceeds the cost or other unrecovered basis of petitioners' business.↩
5. The composite rate is based upon an average life for a particular asset group.↩
6. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.↩
7. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; * * *↩
*. By official order of the Tax Court dated October 28, 1965 and signed by Judge Fay↩, this paragraph was substituted for material previously appearing at this point.