María T. Robles Ostolaza, demandante y recurrente, *v.* Universidad de Puerto Rico y Federal Insurance Company, demandados y recurridos.

*Número:* R-66-133      *Resuelto:* 14 de octubre de 1968

---

*Ramírez, Tirado & Marchand* y *Jorge Segarra Olivero*, abogados de la recurrente; *Francisco Ponsa Feliú* y *Wilson Colberg*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

¿Es privativa o pertenece a la sociedad de gananciales la compensación que recibe un cónyuge por concepto de daños y perjuicios ocasionados a su persona? Ésta es la cuestión que debemos resolver en este caso.

La recurrente demandó en daños y perjuicios a la Universidad de Puerto Rico, un organismo público dedicado a la educación superior con autoridad para demandar y ser demandado. ([1]) También demandó a la compañía aseguradora.

---

([1]) Ley Núm. 1 de 20 de enero de 1966; 18 L.P.R.A. sec. 602(f).

Los demandados presentaron una moción de desestimación, la cual fue declarada con lugar por el tribunal de instancia. Se basó el tribunal en que siendo casada la demandante y habiendo ella demandado en su nombre propio no tenía causa de acción porque ésta correspondía a la sociedad de gananciales. El tribunal de instancia falló a base del derecho jurisprudencial existente entonces en Puerto Rico sobre esta cuestión. Expedimos el recurso para reexaminar la misma. Ya anteriormente habíamos intimado que llegado el momento oportuno lo haríamos.[2]

Como no hay en nuestro derecho positivo una disposición expresa que resuelva la cuestión aquí planteada y como tenemos ante nos un caso concreto que resolver, he aquí un claro ejemplo de una situación en que es necesaria y legítima la elaboración jurisprudencial del derecho para suplir una laguna en la ley.[3]

Hace ya más de una generación, en el año 1920, en *Vázquez* v. *Valdés* (Wolf), 28 D.P.R. 467, este Tribunal resolvió por primera vez la cuestión aquí planteada. Allí se concluyó que esa compensación era ganancial. Hemos seguido esa decisión en un buen número de casos. Estamos convencidos de que eso fue un error. Vamos a explicarnos.

---

[2] *Gallart, Admor.* v. *Banco Popular*, 91 D.P.R. 818 (1965); *Gallart Mendía* v. *González Marrero* (escolio 4), 95 D.P.R. 201 (1967).

[3] Código Civil, Art. 7, 31 L.P.R.A. sec. 7; Justiniano, *Instituta*, Libro III, tit. 24, párr. 5 (533); Castán, *La Formulación Judicial del Derecho* (1954); Cardozo, *The Nature of the Judicial Process* (1921), pág. 14; Castán, *Teoría de la Aplicación e Investigación del Derecho* (1947), págs. 301–344; Friedmann, *Legal Theory*, 4ta. ed. (1960), Cap. 32; Stone, Julius, *The Province and Function of Law* (1961), pág. 150; Del Vecchio, *Filosofía del Derecho*, 7ma. ed. (1960), pág. 344; Esser, *Principio y Norma en la Elaboración Jurisprudencial del Derecho Privado* (1961), pág. 321; Recasens Siches, *Vida Humana, Sociedad y Derecho*, 2da. ed. (1945), págs. 282 y 319–324; Pound, *Law Finding Through Experience and Reason* (1960); Puig Brutau, *La Jurisprudencia como Fuente del Derecho*, pág. 188; Paton, *Jurisprudence* (1951), págs. 166–167.

Rige este asunto el Capítulo 273 del Título 31 de L.P.R.A. el cual trata de la sociedad de gananciales. [4] Como se sabe, el Código Civil no fue improvisado, sino que fue el producto de un penoso esfuerzo creador iniciado en las Cortes de Cádiz, recogido en la Constitución de 1812 y que se hizo realidad en el Código Civil Español de 1889. [5] Nuestro Código es el español, el cual fue hecho extensivo a Puerto Rico ese mismo año de 1889 mediante un real decreto de la Reina Regente María Cristina. [6] Es el Código Civil un cuerpo legal armónico; muchas de sus disposiciones están interrelacionadas y su articulado hay que leerlo e interpretarlo en conjunto. Así por ejemplo, en lo que sobre la sociedad de gananciales se refiere, lo que no esté previsto por el Capítulo 273 del Código no es necesariamente una cuestión de *casus omissus*, ya que el propio Código dispone en su Art. 1298 (31 L.P.R.A. sec. 3624) que "La sociedad de gananciales se regirá por las reglas del contrato de sociedad en todo aquello en que no se opongan a lo expresamente determinado por este capítulo."

De una lectura reflexiva de todo ese Capítulo 273 se desprende que trata de los bienes que son susceptibles de entrar en el comercio de los hombres: muebles o inmuebles, dinero, rentas, ganado, etc. Conociendo la sociedad española que produjo ese código y la nuestra que lo adoptó tenemos que concluir que el legislador no incluyó ni pensó incluir el cuerpo de la mujer casada, o del marido, según sea el caso, como un bien sujeto al comercio de los hombres. Esto es ya una razón para pensar que la compensación que se recibe como el

---

[4] Dicho Capítulo corresponde al Capítulo IV del Título III del Libro IV del Código Civil de Puerto Rico, ed. de 1930; 31 L.P.R.A. secs. 3621–3701.

[5] Castán, *Derecho Civil Español, Común y Foral*, Tomo I, Vol. 1, 10ma. ed. (1962), págs. 173–180; Puig Peña, *Compendio de Derecho Civil Español* (1966), Tomo I, págs. 16–17; De Castro, *Derecho Civil de España* (1949), Tomo I, págs. 185–198; Puig Peña, *Tratado de Derecho Civil Español* (1957), Tomo I, págs. 149–171.

[6] Puede verse el texto del decreto real en Manresa, *Comentarios al Código Civil Español*, 6ta. ed. (1943), Tomo I, pág. 75.

equivalente pecuniario de un miembro del cuerpo perdido o dañado debe ser privativa y no ganancial.

Sin embargo, reconocemos que aunque el cuerpo físico de los cónyuges no está en el comercio de los hombres, la compensación en dinero, o su equivalente, que se obtiene por un daño personal sí lo está. Por eso es lícito recurrir a las disposiciones del Código para determinar, ya sea mediante la lectura y aplicación de la norma escrita si la hubiese, o mediante la superación de la laguna si no la hubiese, si dicha compensación es privativa o ganancial.

Dicho Capítulo 273 expresa cuáles bienes serán considerados gananciales y cuáles privativos. Pero, como ya mencionamos, no especifica cómo ha de considerarse la compensación recibida por daños a la persona de los cónyuges.

Luego de definir la sociedad de gananciales y de expresar cuándo ésta comienza y termina, el Código en su Art. 1299 (31 L.P.R.A. sec. 3631) dispone que son bienes propios de cada cónyuge los siguientes:

"(1) Los que aporte al matrimonio como de su pertenencia.

(2) Los que adquiera durante él, por título lucrativo, sea por donación, legado, o herencia.

(3) Los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges.

(4) Los comprados con dinero exclusivo de la mujer o del marido."

Más adelante el Código expresa, en su Art. 1301 (31 L.P.R.A. sec. 3641) que son bienes gananciales:

"(1) Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.

(2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.

(3) Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges."

Para dirimir las posibles controversias que puedan surgir sobre si los bienes de que trata dicho Capítulo 273 del Código son privativos o gananciales, el Código en su Art. 1307 establece la siguiente presunción:

"Se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer." 31 L.P.R.A. sec. 3647.

■ El error de comisión en *Vázquez* v. *Valdés*, supra, consistió en que al no encontrar incluida la compensación recibida por daños a la persona de un cónyuge ni en el Art. 1299 (bienes privativos) ni en el 1301 (gananciales) se concluyó que era "necesariamente una propiedad ganancial." Para llegar a esa conclusión se utilizó la presunción del Art. 1307 (antes Art. 1322). Allí se convirtió una presunción controvertible en una presunción concluyente, lo cual no era, dados los términos del Art. 1307, lógicamente necesario y fue además jurídicamente erróneo.[7] La presunción de gananciales del Art. 1307 subsiste "mientras no se pruebe" otra cosa. Sobre el particular expresa Castán:

"Con objeto de resolver las dudas que con mucha facilidad pueden suscitarse acerca de la procedencia y carácter de determinados bienes del matrimonio . . . las legislaciones establecen la regla supletoria de que los bienes de éstos se tienen por comunes mientras no se pruebe lo contrario." *Derecho Civil Español, Común y Foral,* Tomo V, Vol. 1, 8va. ed. (1960), págs. 264–265.

---

[7] Otro error que se cometió en *Vázquez* v. *Valdés*, supra, ya ha sido subsanado. Allí "sin detenernos a investigar" se dijo que "resultaba claro" que el Art. 54 del Código de Enjuiciamiento Civil vigente entonces no era aplicable a una acción perteneciente a la sociedad de gananciales. Dicho Art. 54 expresamente dispone que una mujer casada no necesita del concurso de su marido para litigar cuando vive separada del mismo por abandono de éste. Posteriormente el Tribunal se detuvo a investigar y leyendo dicho Art. 54 ratificó que una mujer casada en esas circunstancias puede demandar por sí sola no obstante el carácter ganancial de la acción que ejercite. *Vázquez* v. *Porto Rico Ry., L. & P. Co.,* 35 D.P.R. 62, 78 (1926).

En el mismo sentido véanse Borrell y Soler, *Derecho Civil Español*, Tomo IV (1954), pág. 434; Espín, *Manual de Derecho Civil Español* (1963), Vol. IV, pág. 185; Manresa, *Comentarios al Código Civil Español*, Tomo IX, 5ta. ed. (1950), pág. 569; Valverde, *Tratado de Derecho Civil Español*, Tomo IV, 4ta. ed. (1938), pág. 368; y Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, Tomo VIII (1938), pág. 203.

Comentando el Art. 1407 equivalente al 1307 nuestro, Scaevola, de acuerdo con los otros aquí citados, explica que "no se entienda que, por el solo hecho de existir dudas, los bienes han de ser gananciales" y, naturalmente, añade que la presunción del citado artículo es aplicable a aquellos casos en que falte prueba en contrario. *Código Civil*, Tomo 22, 2da. ed. (1967), pág. 447 (en la primera edición pág. 233).

Como puede verse, el Art. 1307 no tiene otro efecto que el de imponer el peso de la prueba sobre el cónyuge que reclame determinados bienes del matrimonio como suyos. Es una regla de carácter evidenciario y no de carácter sustantivo. Su inclusión en el Código no tuvo el propósito de establecer que todo bien cuya clasificación no haya sido previamente determinada habrá de clasificarse como ganancial, sino de establecer que es necesario demostrar la naturaleza de privativo de todo bien que se reclame como tal.

No siendo, como hemos visto concluyente, sino meramente controvertible la presunción que establece el Art. 1307 y conociéndose la procedencia u origen de la compensación por daños a la persona ¿cómo hemos de clasificarlos, privativos o gananciales?

El error que podemos llamar de omisión en que se incurrió en *Vázquez v. Valdés*, supra, y del cual fue consecuencia el error de comisión antes señalado, consistió en que se pasó por alto que en el Código Civil español y en el nuestro no se dispuso para una comunidad universal de bienes sino que lo que se estableció fue una sociedad de gananciales. Por eso

el matrimonio en Puerto Rico no tiene el efecto de fundir en una masa común los bienes propios de cada cónyuge, sino que se conservan como tales. La sociedad de gananciales de nuestro Código es, como su nombre lo dice, una sociedad de ganancias, de beneficios. [8]

Antes de continuar despejemos el camino disponiendo de lo siguiente. En *Vázquez* v. *Valdés*, supra, al no encontrarse una solución dada de antemano en la ley escrita o en la jurisprudencia del país y al no producirse una autóctona, se tendió la vista a "las autoridades que han sido tomadas de los Estados [Unidos] donde existe la sociedad de gananciales," y luego se cita a McKay, *Community Property*, secs. 180–181.

En primer lugar, el citado autor, como es de esperarse, se remonta a discutir el origen de las doctrinas del derecho común anglosajón que constituyen el trasfondo de decisiones judiciales subsiguientes en ese derecho. Si se recuerda el origen histórico y jurídico del concepto de la propiedad en el derecho angloamericano de origen feudal y el del concepto de la propiedad en el derecho civil de origen romano se percatará uno de que ése no era el camino para resolver un problema de interpretación y aplicación del Código Civil. Más propio hubiese sido, tratándose como se trata de una institución de derecho civil, ir en busca de luz a la doctrina y a la jurisprudencia civilista europea continental.

En segundo lugar, las leyes de esos Estados hacia donde se miró en aquella ocasión eran distintas a la ley de Puerto Rico. Allá las leyes, luego de enumerar los bienes privativos, disponían que *todos los demás* eran gananciales. [9] En Puerto

---

[8] Véase sobre las diferentes comunidades de bienes con ocasión del matrimonio, Castán, *Derecho Civil Español, Común y Foral*, Tomo V, Vol. 1, 8va. ed. (1960), págs. 209–224.

[9] Véase Funiak, *Principles of Community Property*, Vol. 2 (1943), App. V: *Laws of American States*, en específico en las siguientes pá-

Rico, por el contrario, la ley no dispone que luego de enumerados los bienes privativos serán gananciales todos los demás, sino que sólo los reputa gananciales mientras no se pruebe otra cosa. Código Civil, Art. 1307.

En tercer lugar, el propio autor McKay sostiene lo contrario de lo que se resolvió en *Vázquez* v. *Valdés*, supra. En el prefacio de su obra nos advierte que ya se está desmoronando (¡esto en el año 1925!) la doctrina que sostiene que la causa de acción de una esposa por daños sufridos por ella pertenece a la sociedad de gananciales.[10] Allí señala como "esa injusticia" había sido corregida en Louisiana y Texas. Y en la sección 398 de la misma obra el autor se manifiesta en contra de la antigua doctrina del derecho común y sostiene que la compensación por daños a la persona de un cónyuge debe considerarse privativa.

Examinados esos antecedentes y puesto el problema en su perspectiva pasamos a fundamentar nuestra decisión.

La compensación tiene el propósito de reparar el daño causado. Como no se puede hacer en especie se hace pagando su equivalente en dinero. Es una compensación que se da por haberse violado el derecho de la persona a su integridad y seguridad físicas. Difícilmente hay un derecho más personal que el derecho de cada ser humano a la integridad de su persona. En este sentido, como veremos más adelante, se pronuncia la doctrina.

Un abogado puertorriqueño ha expresado con claridad esta posición:

"Para que algo pueda pasar a formar parte de la sociedad de gananciales, tiene que ser una ganancia o un beneficio, ya que la sociedad conyugal es una de provechos, de ganancias, de beneficios. ¿Es la indemnización por daños personales una ga-

ginas: 531, Ley de Arizona; 536, Ley de California; 550, Ley de Ohio; 558, Ley de Louisiana; 574, Ley de Nevada; 582, Ley de New Mexico; 590, Ley de Oklahoma; 596, Ley de Oregon; 608, Ley de Texas; 614, Ley de Washington.

[10] *Community Property*, 2da. ed. (1925).

nancia o un beneficio? Obviamente no es ninguna. La indemnización es esencialmente reparadora. Si pudiera ordenarse una restitución del miembro dañado, esa sería la indemnización a que sería condenado el malhechor. Pero como normalmente no es posible una reparación verdaderamente tal, o sea una restauración *in integrum* del estado primitivo de cosas antes del acto dañoso, hay que buscar en alguna forma la manera de compensar el daño causado. Esto se logra reduciendo a equivalentes pecuniarios los valores materiales y morales lesionados. Es decir, la indemnización pecuniaria por los daños personales sufridos es una forma indirecta de reparar lo dañado."[11]

Colin y Capitant escriben:

"Cuando uno de los esposos es víctima de un accidente, la indemnización que le es debida por el autor responsable, o bien el capital que le debe pagar la compañía con la cual había contratado un seguro, ¿ingresan en la comunidad o bien continúan siendo propios del esposo acreedor? El Tribunal de Casación que conoció de este asunto en lo relativo a los daños y perjuicios, la resolvió en el sentido de excluirlo de la comunidad (citas omitidas) teniendo en cuenta una razón que nos parece decisiva, cual es, que la indemnización representa la pérdida de actividad, aptitud al trabajo, causada por el accidente. Y esta actividad es esencialmente propia, peculiar del esposo, no susceptible de entrar en común. La comunidad se aprovechará de las rentas de la indemnización de la misma manera que se aprovecha de los productos del trabajo del esposo, pero no del capital."[12]

■ Para una expresión similar puede verse Puig Peña, *Tratado de Derecho Civil Español*, Tomo II, Vol. 1 (1953), pág. 300.

Planiol y Ripert también consideran como la más acertada la doctrina establecida por la Corte de Casación al establecer que la indemnización por accidente causado a

---

[11] Bernier, *Las Acciones de Daños y Perjuicios Extracontractuales en la Sociedad de Gananciales*, 20 Rev. Jur. U.P.R. 172–222, cita precisa a la pág. 202 (1950). Este trabajo constituye la expresión más completa y persuasiva que hemos visto sobre este asunto.

[12] *Curso de Derecho Civil*, trad. española, 3ra. ed. (1955), Tomo 6, pág. 262.

uno de los esposos es un bien privativo. Considera que en esos casos la indemnización repara un perjuicio exclusivamente personal.[13] Scaevola señala que no desaparecen en la comunidad los bienes recibidos por cualquiera de los cónyuges mediante un "título personalísimo," ni aquellos otros con que se sustituyen los que eran de dominio individual.[14] Consonantemente con esa expresión puede argumentarse que la causa de acción por daños a la persona es una de naturaleza personal o personalísima y que la compensación que repara el daño causado a la persona es privativa.[15]

Josserand también favorece la antes mencionada doctrina de la Corte de Casación en el sentido de que la compensación es un bien propio y no ganancial. Expresa que:

". . . se considera que la indemnización es representativa de la persona misma de la víctima, de su salud, de su integridad corporal, las cuales no son evidentemente susceptibles de ser puestas en comunidad."[16]

Enneccerus, Kipp y Wolff, igual que Scaevola, excluyen de la comunidad los bienes que se obtienen mediante un título personalísimo.[17]

McKay se pronuncia decididamente en favor del carácter privativo de la compensación en estos casos. Se basa principalmente en la razón, compartida por casi todos los autores, de que el derecho a la integridad de la persona física es un derecho muy personal y en consecuencia también lo es la causa de

---

[13] *Tratado Práctico de Derecho Civil Francés* (1938), Tomo 8, págs. 265–267.

[14] *Código Civil*, Vol. 22, 2da. ed. (1967), pág. 155. En la primera edición pág. 28.

[15] Ya en *Travieso* v. *Del Toro*, 74 D.P.R. 1009, 1016 (1953), caracterizamos como una "acción directa y personal" la causa de acción por muerte.

[16] *Derecho Civil*, Tomo III, Vol. 1 (1951), pág. 30.

[17] *Tratado de Derecho Civil*, trad. española, Tomo IV, Vol. 1, 2da. ed. (1953), pág. 435.

acción y la compensación recibida. ([18]) En igual sentido escribe Pitler. Argumentando sobre la naturaleza personal del daño y de la compensación, señala este autor, con razón, que cada cónyuge lleva su cuerpo al matrimonio pero que cuando éste se disuelve se lo lleva consigo. Llama anacronismo social a la antigua regla que consideraba la acción y la compensación ganancial. ([19])

En Puerto Rico además de Bernier se han ocupado específicamente de este problema la Profesora Herrera y el Profesor Guaroa Velázquez. Los tres autores favorecen la doctrina que considera de naturaleza privativa la compensación recibida en estos casos. ([20])

La jurisprudencia francesa es abundante y sostiene el mismo criterio que aquí sustentamos. ([21])

Lo anteriormente expuesto pone de relieve el argumento de justicia intrínseca que lleva a los tribunales y a la doctrina a concluir que es de naturaleza propia o privativa la compensación que un cónyuge recibe por daños a su persona. A continuación exponemos otro argumento que es de justicia sustancial también, pero que contiene además un argumento de justicia económica. Los autores señalan que entre los elementos del activo y pasivo de la sociedad de gananciales existe una equitativa correlación cuyo objeto es evitar injusticias económicas en la operación de la sociedad. ([22])

Lo dicho anteriormente se aprecia cuando se examinan los artículos del Código que rigen la materia. Por ejemplo,

---

([18]) *Community Property*, 2da. ed. (1925), sec. 398.

([19]) Chi. Kent L. Rev., Vol. 31 (1953), pág. 251.

([20]) Herrera, *La Mujer Casada y la Acción por Daños y Perjuicios*, 34 Rev. Jur. U.P.R. 397 (1965); Velázquez, *Obligaciones y Contratos*, Vol. II (1942), pág. 128. El trabajo de Herrera tiene un rico acopio de jurisprudencia del "common law".

([21]) Véanse los casos citados en Planiol y Ripert, obra citada, pág. 265; en Josserand, obra citada, pág. 30 y Colin y Capitant, obra citada, pág. 262.

([22]) Scaevola, obra citada, Tomo 22, 2da. ed. (1967), págs. 473–477 y 508; Velázquez, obra citada, pág. 128; Bernier, trabajo citado, pág. 216.

el Art. 1308(2) establece que serán de cargo de la sociedad de gananciales los atrasos devengados durante el matrimonio de las obligaciones a que estuviesen afectos los bienes propios de cada cónyuge y los gananciales. Esta carga está compensada por el Art. 1301(3) que dispone que son gananciales los frutos, rentas o intereses devengados durante el matrimonio procedentes de los bienes privativos o gananciales. Así también el Art. 1308(5) pone a cargo de la sociedad de gananciales el sostenimiento de la familia y la educación de los hijos. Compensa este cargo la disposición del Art. 1303 que dispone que pertenecen a la sociedad de gananciales los frutos e intereses devengados del usufructo que tienen los cónyuges en los bienes de sus hijos. Por ser ésto de fácil comprobación creemos innecesario, y además sería prolijo, relatar todos los ejemplos de éstos que contiene el citado Capítulo 273 del Código. (23)

Esa equitativa correlación que tan acertadamente mantiene el Código había quedado quebrada por la decisión en *Vázquez* v. *Valdés*, supra.

■ Como hemos señalado antes, lo no previsto en el Capítulo 273 del Código sobre la sociedad de gananciales no queda necesariamente falto de norma pues el Art. 1298 dispone que la sociedad de gananciales se regirá por las reglas del contrato de sociedad en todo aquello que no resulte incompatible con lo expresado en dicho Capítulo 273. A este respecto nótese que ni aun bajo el supuesto amplio de un contrato de sociedad universal podría considerarse la compensación por daños personales como propiedad de la sociedad ya que al reglamentar el contrato de sociedad el Código dispone en su Art. 1567 (31 L.P.R.A. sec. 4322) que "el contrato de sociedad universal, celebrado sin determinar su especie, sólo constituye la sociedad universal de ganancias." Como se sabe, las sumas recibidas por concepto de indemni-

---

(23) En el citado trabajo de Bernier, págs. 214–216 se citan más ejemplos de lo anterior y varias autoridades.

zación por daños no son ganancias y no están sujetas a la contribución sobre ingresos. (24)

También dispone el Código que la sociedad universal de ganancias (y recuérdese que la comunidad matrimonial en Puerto Rico no es una comunidad universal de bienes sino que es una sociedad de gananciales) comprende lo adquirido por los socios "por su industria o trabajo" y especifica que los bienes que cada socio posea al tiempo de celebrar el contrato continúan siendo de su dominio particular. Pasa solo a la sociedad el usufructo. Art. 1566; 31 L.P.R.A. sec. 4321. Esto es acorde con la situación de la sociedad matrimonial de gananciales en la cual los bienes propios siguen siendo propios pero son gananciales sus frutos y rentas. Art. 1301. Continuando el pensamiento puede razonarse que en la sociedad de gananciales los bienes adquiridos por el trabajo de los cónyuges son gananciales pero no así la persona de cada uno. Si es privativa la propiedad que un cónyuge compra con dinero propio y la que adquiere si permuta un bien propio ¿cómo no ha de serlo la compensación que recibe a cambio de un brazo, de un ojo, de una pierna?

Al decidir que la compensación en estos casos es privativa estamos curando la posición jurídica de inferioridad que en este respecto tenía la mujer casada en Puerto Rico. Nos explicamos: si una mujer casada era lesionada, el marido, como administrador de la sociedad de gananciales, podía determinar por sí solo que el causante del daño no fue negligente y podía negarse a llevar la acción. Por otro lado, el marido, también en su carácter de administrador de la sociedad de gananciales, podía transigir la acción y aceptar una suma menor que la que en justicia debía pagarse. En una tercera hipótesis, aun recibiéndose una compensación adecuada, el marido podía utilizarla en forma que en nada

---

(24) *Hawkins* v. *Commissioner*, 6 B.T.A. 1023; *McDonald* v. *Commissioner*, 9 B.T.A. 1340; *Farmers' & Merchants' Bank* v. *Commissioner*, 59 F.2d 912; Ley de Contribución sobre Ingresos, 13 L.P.R.A. sec. 3022(5).

beneficiase a la esposa perjudicada o aun podía perderla en juegos de azar. En otra hipótesis, luego de obtenerse adecuada compensación, al marido le podía tocar la mitad de la misma si el matrimonio quedaba disuelto por divorcio. Finalmente, también solo le tocaba la mitad a la mujer perjudicada si el marido le premuriese, pues entonces la mitad de la compensación la heredaban sus herederos forzosos.

■ Por los razonamientos antes dichos resolvemos que la compensación que recibe un cónyuge por concepto de daños y perjuicios físicos y morales es un bien privativo. [25] Desde luego, subsistiría el derecho que pudiese tener la sociedad legal de gananciales para demandar en daños y perjuicios, de justificarlo los hechos del caso en particular y de estar en tiempo.

*Se revocará la resolución objeto de este recurso, dictada por el Tribunal Superior, Sala de San Juan, en 14 de abril de 1966 y se devolverá el caso para ulteriores procedimientos no incompatibles con esta opinión.*

Debido a lo que aquí hemos resuelto es necesario revocar y revocaremos los casos de *Vázquez* v. *Valdés*, 28 D.P.R. 467 (1920); *Vázquez* v. *Porto Rico Ry. L. & P. Co.*, 35 D.P.R. 62 (1926); *Flit* v. *White Star Bus Line*, 49 D.P.R. 144 (1935);

---

[25] Contestando la demandante un interrogatorio notificádole por la demandada, aquélla se expresó en parte:

"Al verme el ortopeda me examinó y me recetó y me mandó a acostar por cinco días y a usar muletas para moverme por la casa cuando fuera estrictamente necesario ya que tenía infección llegándome al líquido de la rodilla. El golpe sanó pero el dolor de la cadera seguía. El quinto día fuí a ver el médico, y al montarme en el caro y dar para atrás noté que casi no podía mover el cuello hacia el lado izquierdo y hacia atrás del dolor. En la oficina del médico se decidió por los dolores que presentaba que tenía un cartílago suelto en la rodilla del golpe y que el dolor del cuello y de la cadera había que investigarlo y para eso era necesario hospitalizarme, y así lo hice. El 20 de mayo de 1964 me hospitalicé en el Hospital del Maestro donde permanecí alrededor de 53 días. Pasé alrededor de cinco a seis semanas en descanso absoluto sin moverme para nada de la cama. Luego se descubrió una hernia discal la cual se me operó. Se me dio tratamiento de terapia, etc. . . ."

*Clos* v. *García*, 43 D.P.R. 1042 (1932). También se revocarán las expresiones inconsistentes con esta opinión hechas en los casos de *Serrano* v. *González*, 68 D.P.R. 623 (1948); *Serra* v. *Autoridad de Transporte*, 68 D.P.R. 626 (1948); *Meléndez* v. *Iturrondo*, 71 D.P.R. 60 (1950); *Echevarría* v. *Despiau*, 72 D.P.R. 472 (1951); y *Vega* v. *Cía. Popular de Transporte*, 72 D.P.R. 525 (1951). Así resolvemos porque, como ha podido verse de la anterior discusión, no se trata aquí meramente de una cuestión procesal sino de una sustantiva de causa de acción.

Creemos conveniente aclarar que las acciones que a esta fecha se hayan presentado por la sociedad de gananciales, o por el marido como administrador de la sociedad de gananciales, en reclamación de daños sufridos por cualquiera de los cónyuges, no se desestimarán por esa razón. Sin embargo, en las sentencias que se dicten se le adjudicará al cónyuge que corresponda la compensación que deba concedérsele a tenor con lo aquí resuelto.

El Juez Asociado Señor Santana Becerra concurre con el resultado en opinión separada.

—O—

Voto del Juez Asociado Señor Santana Becerra concurriendo solo en el resultado

San Juan, Puerto Rico, 14 de octubre de 1968

La demanda de daños no contiene expresión en cuanto al estado civil de la demandante María T. Robles Ostolaza. A un interrogatorio de la demandada que está unido a los autos para que expresara su edad, estado civil y dirección exacta la demandante contestó: "38 años de edad, casada". Sobre esta escueta base de hecho, la Sala sentenciadora resolvió el derecho sustantivo de las partes desestimando la demanda sin ir a los méritos.

La sola expresión en los autos de ser casada la demandante, sin más, no determinaba inevitablemente el derecho sustantivo envuelto.

Dispone el Art. 91 del Código Civil, ed. 1930, que el marido será el administrador de los bienes de la sociedad conyugal, *salvo estipulación en contrario*. Esta norma la reafirma el Código en su Art. 1312, salvando expresamente la anterior excepción.

La Regla 15.3 de las de Procedimiento Civil de 1958 dispone que una mujer casada necesita *"del concurso"* de su marido excepto: ". . . (c) Cuando esté viviendo separada de su marido por causa de abandono de cualquiera de los cónyuges." (¹)

Conforme a las anteriores disposiciones de ley una mujer, por el solo hecho de ser casada, no está impedida de demandar en relación a un interés que pertenezca o afecte a ese cuerpo de bienes o unidad económica familiar, *sui generis*, que se denomina sociedad de gananciales. (²) Sólo que necesita *"el concurso"* de su marido, y si la realidad de hecho fuere la de la excepción señalada, ni lo necesita. En *Fernández* v. *Condado Beach Hotel*, 72 D.P.R. 941 (1951), este Tribunal por su entonces Juez Presidente Señor Todd, Jr., se expresó así:

"En innumerables casos hemos reiterado la regla de que una mujer casada necesita *el concurso* de su marido *para poder litigar* una causa de acción *que pertenece a la sociedad de gananciales*".

---

(¹) Tanto el Art. 54 del Código de Enj. Civil, ed. 1933, como la anterior Regla 17(d)(3) de Enjuiciamiento Civil de 1943, condicionaban esta excepción a que el marido hubiera abandonado la mujer.

(²) El Art. 1295 del Código Civil no la define, pero declara, que mediante la sociedad de gananciales, el marido y la mujer harán suyos por mitad, al disolverse el matrimonio, las ganancias o beneficios obtenidos *indistintamente* por cualquiera de los cónyuges durante el matrimonio.

Con miras a la realización de lo dispuesto en este Art. 1295 al disolverse el matrimonio, especifica el Art. 1301 siguiente qué bienes son gananciales.

(Sigue la cita de casos, empezando por el de *Vázquez* v. *Valdés, et al.*, 28 D.P.R. 467, resuelto en el año 1920.) (Énfasis suplido.)

Ante los hechos en el récord, o más propiamente dicho, ante la ausencia de base de hecho en el récord suficiente para resolver el derecheo sustantivo envuelto, la cuestión a. decidir por la Sala sentenciadora a mi juicio debió resolverse como problema procesal de parte demandante, defecto de parte o complemento de parte por "el concurso" de un marido, si una dilucidación de hechos necesarios que no se hizo demostraban la necesidad de tal "concurso".

Convengo en que debe revocarse el fallo que, en lo sustantivo, desestimó definitivamente la demanda con el criterio de la Sala de no ser susceptible de enmienda, pero por las razones de índole procesal que he expuesto.

Conforme a lo anterior, reservo al presente, y para cuando a mi juicio fuera inevitable el tener que considerarlo y resolverlo, todo juicio o expresión en cuanto a si la indemnización o resarcimiento recibido por un cónyuge como consecuencia de lesiones personales sufridas por él, debe ahora considerarse como bienes privativos de ese cónyuge.

No creo necesario hacer tal expresión ahora porque el problema surgido no es uno que va a establecer el concepto propietario o titular de esos bienes entre un cónyuge de un lado, y ese patrimonio de bienes e intereses peculiar llamado sociedad ganancial del otro—como resultaría ser el caso si estuviéramos ante una acción de disolución del matrimonio y repartición del haber acumulado—sino que estamos ante una acción para reclamar u obtener tal indemnización o resarcimiento.

Con mayor razón me abstengo de expresar criterio ahora en las circunstancias del récord que he enunciado, cuando lo que hoy se resuelve desecha y repudia una básica norma de derecho en nuestro ordenamiento civil que casi por medio siglo ha regido la institución familiar en el sensitivo aspecto de su unidad económica.

Es difícil concebir en un solo acto, todas las consecuencias relacionadas con la norma ahora sentada. No pareciéndome necesario que el hecho se afronte aquí, de ameritarse un cambio en el derecho vigente preferiblemente debía serlo por acción legislativa, de modo que integralmente se legisle a la vez en otras áreas que pudieran quedar afectadas.

Al principio de la 5ta. Asamblea Legislativa que acaba de terminar, el 11 de marzo de 1965, se presentó en el Senado el P. del S. 207, enmendando el Art. 1299 del Código Civil para disponer que son bienes propios de cada uno de los cónyuges "los obtenidos como indemnización por daños y perjuicios a sus bienes privativos y a su persona." El Proyecto enmendaba además los Arts. 1308 y 1802. En el curso de dicha 5ta. Asamblea ninguna de las Cámaras aprobó el proyecto.