JORGE JUAN CABRERA, ETC., ET AL., demandantes y recurrentes, *v.* ASOCIACIÓN DE SEÑORAS DAMAS DEL SANTO ASILO DE PONCE; DR. JOSÉ FIOL BIGAS; COMMERCIAL INSURANCE Co., demandados y recurridos.

*Número:* R-66-32     *Resuelto:* 16 de diciembre de 1968

*Miguel A. Velázquez Rivera,* abogado de los recurrentes; *Rieckehoff, Calderón, Vargas & Arroyo, Gustavo Rodríguez y Francisco Parra Toro,* abogados de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Rigau y Dávila.

PER CURIAM: Alicia Sotomayor de Cabrera, casada y madre de siete hijos menores de edad, fue hospitalizada en el hospital Asociación de Señoras del Santo Asilo de Ponce en donde fue tratado por el Dr. José Fiol Bigas de una infección en un ojo. Parte del tratamiento a que fue sometida la paciente consistía de la aplicación periódica en el ojo enfermo de unas gotas de Furacín Oftálmico.

Por error de alguna empleada o empleadas del hospital le administraron a la paciente, a partir de las 7 de la noche del 31 de diciembre cada media hora hasta las 10 de esa noche y de ahí en adelante cada hora, hasta la tarde del día 1ro. de enero siguiente, unas gotas de Furacín Ótico. Como sus nombres lo indican, la droga recetada por el Dr. Fiol es propia para aplicarse a los ojos y la droga que por error le administraron a la paciente es para aplicación en los oídos.

Constan en evidencia un frasco de Furacín Oftálmico y otro de Furacín Ótico. Ambas drogas son producidas por la misma compañía y están envasadas en unos frascos de igual forma, de igual tamaño, de igual color y sus etiquetas son también de igual color. Es fácil confundirlos si no se tiene cuidado. La enfermera o empleada que hizo las aplicaciones, luego se pudo comprobar, no sabía cómo se escribe la palabra oftálmico.

El error se descubrió porque en la tarde del 1ro. de enero el esposo de la paciente fue a visitarla al hospital y ésta se le quejó que desde el día anterior le estaban administrando unas gotas que le ardían mucho, como si le quemaran. La paciente se había quejado a la enfermera de ese dolor pero le continuaron administrando las gotas. En la tarde del día 1ro. de enero, estando el esposo de la paciente en la habitación le fueron a aplicar las gotas y ésta le pidió a su esposo, que es farmacéutico, que viese qué gotas eran ésas porque le estaban quemando el ojo. Su esposo inmediatamente tomó el frasco de las manos de la enfermera y se percató de que estaban utilizando Furacín Ótico, la droga que es para aplicarse en los oídos pero no en los ojos. Se llamó al Dr. Fiol, quien vino al hospital y quien al tomar en sus manos el frasco de Furacín Ótico vació su contenido en el lavamanos y luego entregó el frasco a una enfermera que había acudido a la habitación.

Conviene aclarar que la opinión del Tribunal Superior

induce a error al expresar, en su conclusión de hecho Núm. 10, que el frasco de Furacín Ótico "lo había dejado sobre la mesa de noche" el esposo de la paciente. Sin mayor explicación, eso puede dar a entender que el frasco lo llevó a la habitación y lo dejó allí el esposo de la paciente. Eso no fue así. Ese frasco no lo trajo al hospital el esposo de la paciente sino que lo tenía la enfermera y, como hemos dicho, fue cuando ella le fue a administrar las gotas a la paciente que ésta se quejó al esposo del dolor que esas gotas le causaban y entonces su esposo tomó el frasco de las manos de la enfermera. Lo dejó allí para que el doctor, quién había sido llamado, lo viese.

La evidencia pericial indica que el ojo enfermo de la paciente era objeto de una infección severa causada por la bacteria estafilococo hemolítico áureo y que es problemático si el ojo podía salvarse o no. La infección no cedió a pesar del tratamiento intensivo a que fue sometida la paciente y fue necesario eviscerarle el ojo lo cual conllevó la pérdida total de la visión por el mismo. Tampoco puede determinarse— hasta donde la evidencia pericial lo indica y hasta donde sabemos nosotros—en qué medida contribuyó a agravar la condición del ojo la aplicación de la droga equivocada.

La propia compañía que fabrica ambas drogas—la Norwich Pharmacal Co.—en carta que le escribió al Dr. Fiol y al Lcdo. J. M. Canals, explica que cuando por error se administra el Furacín Ótico a un ojo el mismo debe lavarse completa y rápidamente.([1]) De la prueba pericial podemos

---

([1]) Dicha carta en lo pertinente expresa:

"The dropping of Furacin Otic Solution in the eye was an incorrect use of the drug. When it occurs inadvertently, the eye should be washed out quickly and thoroughly with physiological normal saline solution. . . .

"It is believed that generally recognized experts in the field of ophthamology will agree that the use of a hygroscopic agent in the conjunctival sac of the eye should be avoided. The package insert clearly states that the polyethylene glycol used as the vehicle is hygroscopic.

"Furacin Ophthalmic, an entirely different formulation, is intended for use in the eye. . . ."

concluir que la aplicación equivocada de Furacín ótico a un ojo sano, por un tiempo que no fuese demasiado excesivo, produciría irritación y molestia pero no la pérdida de la visión. Nos parece razonable asumir que en un ojo gravemente enfermo, como estaba el de la paciente, esa aplicación equivocada debió producir mayor irritación y molestia que en el caso de un ojo saludable y que en alguna medida que se desconoce probablemente agravó la condición del ojo. No podemos concluir que la pérdida del ojo se debió únicamente a la aplicación equivocada de Furacín ótico.

Aceptamos como correcto que (1) las empleadas del hospital administraron por equivocación el Furacín ótico, (2) que dicha droga no indicada para ese tratamiento causó considerable dolor físico a la paciente y considerable sufrimiento mental a la misma una vez que se enteró de lo sucedido y (3) que en alguna medida dicha droga contraindicada para uso en los ojos agravó la condición del ojo enfermo. Por lo tanto, debemos concluir que en efecto se causaron daños por los cuales el hospital y su aseguradora han incurrido en responsabilidad civil.

En consecuencia, *se revocará la sentencia del Tribunal Superior en la parte que declara la demanda sin lugar en cuanto al hospital y a su aseguradora y se condenará al hospital demandado y a su aseguradora, la Commercial Insurance Company, a pagar solidariamente a la sociedad de gananciales compuesta por Jorge Juan Cabrera y su esposa Alicia Sotomayor de Cabrera, las siguientes sumas: $2,000.00 por concepto de gastos médicos, hospitalización y medicinas; $300.00 por concepto de gastos de viajes incurridos en relación con la enfermedad de la demandante y $300.00 en pago de gastos incurridos para la atención de los hijos menores del matrimonio mientras la esposa demandante permaneció recluida. Uno de los menores no contaba todavía con un mes de edad. También se condenará al hospital demandado y a*

*su aseguradora a pagar solidariamente a la demandante Alicia Sotomayor de Cabrera la suma de $8,000.00 por concepto de daños y perjuicios por ella sufridos por sufrimientos físicos y mentales. Igualmente se condenará a los mencionados demandados a pagar a los demandantes $1,000.00 por concepto de honorarios de abogado y las costas. Se confirmará la parte de la sentencia del Tribunal Superior que declaró sin lugar la demanda en cuanto al Dr. José Fiol Bigas, quién actuó diligentemente conforme lo demuestra la evidencia.*

El Juez Asociado Señor Santana Becerra emitió un voto por separado.

—o—

Voto separado del Juez Asociado Señor Santana Becerra

San Juan, Puerto Rico, 16 de diciembre de 1968

Mi voto en la decisión de este caso no lleva consigo expresión de criterio sobre el concepto de la cantidad de OCHO MIL ($8,000) DÓLARES que se concede a la demandante Alicia Sotomayor de Cabrera, conforme a la posición asumida por mí en *Robles Ostolaza* v. *U.P.R.*, 96 D.P.R. 583 (1968).